[No. 39845. En Banc. October 17, 1968.]

PAUL THIRY, *Respondent,* v. THE ATLANTIC MONTHLY COMPANY, *Appellant.*[*]

*Holman, Marion, Perkins, Coie & Stone, J. Paul Coie,* and *Keith Gerrard,* for appellant.

*Schweppe, Doolittle, Krug & Tausend, Alfred J. Schweppe,* and *Fredric C. Tausend,* for respondent.

McGOVERN, J.—On file in the United States District Court for the Western District of Washington, Northern

[*]Reported in 445 P.2d 1012.

Division, is a complaint by Paul Thiry, Seattle architect, against the Atlantic Monthly Company. The thrust of the complaint rests in libel resulting from an article published by that company in its February 1967 issue. Mr. Thiry alleges malice.

The record before us, as supplemented by oral argument of counsel, discloses the following: Appellant, hereinafter referred to as "Atlantic," is a Massachusetts corporation, maintaining its editorial, circulation and advertising offices in Boston. It has no employees, property, shareholders, nor has it been licensed to do business in the state of Washington. Its advertising arm is a Massachusetts corporation and the magazine is printed in New Hampshire.

Additional facts indicate that paid subscriptions in the state of Washington for the Atlantic approximate 5,500 copies monthly. Newsstand sales total about 1,000 copies each month. Each of these totals is in excess of 2 per cent of the magazine's national circulation in its respective category.

The respondent, hereinafter referred to as "Thiry," has practiced the profession of architecture in Seattle continuously since 1929. He is a fellow of the American Institute of Architects and makes his home in the city of Seattle.

Service of process on Atlantic was made by service of summons and complaint on one Frank Herbert, treasurer of Atlantic, in the city of Boston, Massachusetts on March 6, 1967.

Atlantic thereupon moved the district court to dismiss the action on the ground that the court had no jurisdiction of the defendant. Thiry countered that jurisdiction was acquired by the service of process previously mentioned under our state "long-arm" statute. RCW 4.28.185. That statute provides, in applicable part, as follows:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

    (a)   The transaction of any business within this state;

    (b)   The commission of a tortious act within this state;

. . . .

(2)   Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the defendant outside this state, as provided in RCW 4.28.180, with the same force and effect as though personally served within this state.

Following a hearing on the merits, Atlantic's motion was denied, whereupon it orally moved that the question of jurisdiction be certified to this court as one of local law.

In granting the oral motion, the federal court, by way of our Federal Court Local Law Certificate Procedure Act, RCW 2.60, certified the following question to us:

Based upon the record in this case, can courts of the state of Washington pursuant to RCW 4.28.185 obtain *in personam* jurisdiction over an out-of-state publisher who has circulated an alleged libel in the state of Washington?

If the circulation of an alleged libel in the state of Washington, under the circumstances of this case, constitutes either the "commission of a tortious act" or the "transaction of any business" within this state, then the answer to the certified question must be "yes."

■   We do answer in the affirmative. In *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wn.2d 469, 471, 403 P.2d 351 (1965), we held that "where damages result from negligence of a defendant, the injury occurring in this state is an inseparable part of the 'tortious act,' as that term is used in the statute." (The statute referred to being our long-arm statute.) There, like here, the claimed damages were suffered within this state as a result of the alleged tortious act occurring without the state. *See also Nixon v. Cohn*, 62 Wn.2d 987, 385 P.2d 305 (1963). Certainly, if Thiry incurred damages, they were suffered here in the state of his residence and principal place of business. The alleged tortious act thus occurred in this state.

Having concluded that the act occurred in this state, we need not consider the question of whether Atlantic transacted business within this state under the foregoing set of facts and within the meaning of RCW 4.28.185, *supra.*

In reaching our decision in this matter we are mindful of RCW 2.60.020.

When in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of this state in order to dispose of such proceeding *and the local law has not been clearly determined,* such federal court may certify to the supreme court for answer the question of local law involved and the supreme court shall render its opinion in answer thereto. (Italics ours.)

We believe that our holding in *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp., supra,* is crystal clear—so clear in fact that we conclude that the certified question should not have been referred.

The question of the constitutionality of the Federal Court Local Law Certificate Procedure Act, RCW 2.60, has not been considered in this cause. That question was argued to this court in the case of *In re Elliott, ante* p. 600, 446 P.2d 347 (1968), and determined in the opinion filed therein.

This matter is therefore remanded to the United States District Court for the Western District of Washington, Northern Division, with the foregoing answer to its certified question.

FINLEY, C. J., HILL, ROSELLINI, HUNTER, HAMILTON, and NEILL, JJ., concur.

WEAVER, J. (concurring with reservations)—If we give advisory opinions—and I do not believe we have the constitutional power to give them, or that we can be required to give them—then I believe the majority opinion holding that the certified question should not have been referred to us is correct.

HALE, J. (dissenting)—What passes for wisdom one day may on the next be revealed as little more than good luck

or coincidence. It so happened that this, the case next following our decision in *In re Elliott, ante* p. 600, 446 P.2d 347 (1968), under the Federal Court Local Law Certificate Procedure Act, RCW 2.60, quite perfectly illustrates the points sought to be made in the dissent thereto. In dissenting to *Elliott,* I hoped, among other things, to point out that:

1. The Federal Court Local Law Procedure Act, Laws of 1965, ch. 99, p. 1302, was an unconstitutional trespass by the legislature on the judicial power.

2. The certificate procedure statute unconstitutionally ordered this court to give advisory opinions.

3. The statute unconstitutionally breached the separation of powers doctrine, long separating the executive, legislative and judicial branches of government. And,

4. If, as the majority holds in *Elliott,* our duties under the certification statute are not mandatory, but instead directory, our assuming of jurisdiction in any event is bad judicial policy.

The instant case, in my opinion, vindicates every point set forth in the dissent to *Elliott, supra.* As luck would have it, four other questions in the certification procedure, not apparent in *Elliott,* work their way to the surface here: (1) Does a party to the federal case who feels aggrieved at the order of certification, have a remedy by appeal to the court of appeals and higher? (2) How does this Supreme Court handle an inadequate, or doubtful, or insufficient question? (3) What if the Supreme Court believes that the local law has been declared, or is as reasonably certain as can be expected of the law in a given area? And, (4) What if the complaint does not state a case? Are these questions any concern of the court to whom the question is certified?

First, as implied in the dissent to *Elliott,* the certification procedure from federal trial courts to the Supreme Court of the state purports to put the state court under the direction and review of a federal trial court and makes it responsible thereto. In certifying the answer to the federal trial court, the majority have acceded to the United States

District Court's categorical order directed both to the clerk of that court and this Supreme Court admonishing both of us to act quickly and expeditiously, and assure the trial court a speedy answer. The order sending the question here commands the Clerk of the District Court and this Supreme Court to get a move on in the following words:

> ORDERED, ADJUDGED, AND DECREED that the record herein shall be certified by the clerk of this court to the clerk of the Supreme Court of the state of Washington pursuant to the Federal Court Local Law Certificate Procedure Act of Washington and that all proceedings under said act shall be expedited by the clerk of this court and by the Supreme Court of the state of Washington to assure a speedy answer to the question of law certified.

Since this Supreme Court has neither expedited "all proceedings under" that act nor assured a speedy answer to the certified question, presumably this court is now in jeopardy of contempt of the United States District Court. While I personally wish to disavow any seemingly contumacious behavior and reiterate my high regard and respect for the District Courts of the United States, the record here is nonetheless res ipsa loquitur and shows a want of the speed and expedition enjoined upon us by the order of referral.

The question of speed, of course, gives rise to another question of policy. At the time the instant case was argued in this court, January 22, 1968, this court had pending a backlog of approximately 700 cases, some of which were of high precedential value and of exigent importance to the parties. Was this court, under the command of the United States District Court to move expeditiously and speedily, obliged to give the present case precedence over the cases then pending? Under the majority view, that the certificate procedure act is discretionary with us and not mandatory, why should the present case have been given a priority over the several hundred cases already pending? I see nothing in an action for libel, where the parties remain pretty much in status quo pendente lite, to warrant wedging the case in ahead of numerous other appeals which appear to

me to be of far greater consequence to the litigants and of greater precedential value to the public. Had the certified question now before us kept its allotted place on the Supreme Court calendar, it probably would not have been argued for another year. In view of the rather prosaic nature of the cause and its want of emergent qualities, I believe that it received an undeserved priority on the calendar.

There seems to me to be another palpable deficiency in this referred question, a matter which some judges may think to be none of our business. Before sending the question here, the District Court had not—I gather from the record—decided whether the complaint states a cause of action. That court had not then determined if the complaint before it declared a libel per se, libel by innuendo, or no libel at all, or whether it was protected by the doctrine of fair comment or constitutional freedom of speech as a matter of law. For all that this court can say, the claimed libel may be no more than a fair comment upon an artistic creation, or amount to no more than a legitimate criticism of a public project. Perhaps this aspect of the case is none of our business, but if it eventually develops that the complaint does not state a grievance upon which relief can be granted, this court will have participated in a futile exercise in academics. It would be a curious turn of events indeed if, after this court had certified its answer that the District Court of the United States had jurisdiction of the parties under the long-arm statute (RCW 4.28.185), it came to pass that that court decided there was no cause pleaded over which to take jurisdiction.

Assuming arguendo, however, that all procedural hurdles have been taken and that a justiciable controversy is now before the District Court, the question sent here by that court does not seem to me to be one suitable for reference, for I believe that the law on that subject has been well settled, and I do not fully understand why learned counsel were unable to make this clear to the trial judge. Keeping in mind that uncertainty and vagueness seem to inhere in

the law from its very nature and, although constantly striving for it, the law in most areas never achieves more than a fair degree of certainty, I cannot see why the learned trial judge sent the question on the long-arm statute here to us in the first place. To me, the question appears to relate to one of the few areas where the law seems to be about as clear as it ever gets.

In the first case to come before us concerning the long-arm statute (RCW 4.28.185(1)(a)), we held, *inter alia*, that the nonresident defendant must purposefully do some act or consummate some transaction in the forum state in order to subject himself to its jurisdiction. Balancing an extremely remote and tenuous connection the defendant had with any claimed activity occurring here, against the heavy burden of defending here, we held that to compel a New Jersey corporation to defend in Washington would be unfair and unjust. *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 381 P.2d 245 (1963). In *Nixon v. Cohn,* 62 Wn.2d 987, 385 P.2d 305 (1963), defendant, an Oregon corporation, as manufacturer, had built and sold in Oregon an amusement ride machine called the "Meteor." The purchaser took delivery of the Meteor in Oregon and set it up at the Century 21 Exposition in Seattle. Defendant manufacturer's interests in the Washington state aspects of the transaction consisted of giving advice on lighting the machine at the exposition, a visit to the machine at the exposition, staying available in Oregon to service and repair it if necessary, and retaining a property interest under a conditional sale contract to secure the balance of the purchase price. In an action by a plaintiff who suffered injuries while riding on the machine at the Seattle fair against the Oregon manufacturer for defects in manufacturing, we said that the Washington courts had in personam jurisdiction over the manufacturer and that the sale, installation and retaining of a property interest as vendor under a conditional sale contract here met the minimal contacts requirement under the long-arm statute. We additionally held that the complaint charged the commission of a tort within the state

in alleging that the defendant sold and delivered, with intent that it be used here, an inherently dangerous and defective device.

Similarly—as the majority point out in the instant case —*Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 403 P.2d 351 (1965), holds that, where an Illinois manufacturer of an agricultural chemical called "Heptachlor," knew that it was sold to manufacturers in other states, who, in turn, combined it with other ingredients to form pesticides, which would then be sold by them through distributors in this state and the manufacturer advertised the product nationwide and sent representatives here to promote the sale and use of Heptachlor, and also subsidized a research laboratory at Washington State University at Pullman, Washington, for testing the product, amounted to the transaction of business in this state. These actions brought the Illinois manufacturer within the in personam jurisdiction of the state of Washington, we said, under the long-arm statute on a claim for tortious damage to a hop crop and through the transaction of any business here.

Again, we sought to make clear in *Quigley v. Spano Crane Sales & Serv., Inc.,* 70 Wn.2d 198, 422 P.2d 512 (1967), that jurisdiction under the long-arm statute attaches with the purposeful doing of material acts within this state in the transaction of any business in this state under RCW 4.28.185(1). Accordingly, we said that a California manufacturer of cranes who maintained no offices or permanent employees in Washington, but had, nevertheless, sold a few cranes here and had sent sales and service personnel into this state and mailed advertising literature to prospective customers in Washington, was, under RCW 4.28.185(1)(a), subject to the jurisdiction of the courts of this state in the sale of a defective crane to a Washington state resident even though the sale of the crane was negotiated by telephone and title passed in Washington on delivery to the Washington resident. The ordering and sale of the crane by telephone and its delivery to the purchaser in

this state, along with the other described activities of the manufacturer, amounted, we said, to the "transaction of any business" in the state of Washington.

*Quigley v. Spano Crane Sales & Serv., Inc., supra,* extant prior to the order of certification, I think, anticipates our subsequent holdings in *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.,* 71 Wn.2d 679, 430 P.2d 600 (1967). These cases support the view that the law is quite well settled on the question of the transaction of any business or the commission of a tortious act within the state of Washington and portended our recent decision in *Callahan v. Keystone Fireworks Mfg. Co.,* 72 Wn.2d 823, 435 P.2d 626 (1967).

In *Griffiths & Sprague, supra,* a California corporate insurance broker ordered insurance for one of its customers through a Washington corporate broker by telephone and mail, both means of communication being employed in the transaction. The Washington corporation obtained the coverage from a British insurance company and, on default of the premium by the California insured, paid it to the British insurance company. In an action brought in the superior court of the state of Washington by the Washington broker against the California broker to recover the premium thus advanced, we said that the California broker created a connecting link or tie with the forum state here in purposefully initiating a transaction by telephone and mail within this state, and thus transacted some business here by procuring policies of insurance through a Washington resident. *See* 43 Wash. L. Rev. 833 (1968).

It was the purposeful forging of the connecting link within the forum state in the course of consummating a business transaction with a Washington resident that, in our judgment, rendered the California corporation amenable for the relevant consequences of the transaction to the in personam jurisdiction of the courts of this state under **the long-arm statute.** The telephonic and postal negotiations and placing of the order for insurance in Washington by a Washington resident amounted to the transaction of

business in this state within the intent and meaning of RCW 4.28.185. Of similar effect is *Callahan v. Keystone Fireworks Mfg. Co., supra.*

Even though this court were under a constitutional mandate to give advisory opinions, I would question the expediency of sending us this question. I question the procedure first because the law at the time of certification was quite well settled that the Washington courts would, under our long-arm statute, have jurisdiction; secondly, because the certified question was not sufficiently definitive in form; and thirdly, because the court had not finally ruled upon the cause of action set forth in the complaint.

Assuming that the complaint declares an actionable wrong, our next worry concerns the form of the question put to us and whether our answer to it definitively resolves the jurisdictional query.

The question asks:

> Based upon the record in this case, can courts of the state of Washington pursuant to RCW 4.28.185 obtain *in personam* jurisdiction over an out-of-state publisher who has circulated an alleged libel in the state of Washington?

Our answer thus depends upon our view *of the record in this case.* If, in our judgment, the connecting link which renders the defendant liable under the long-arm statute is present, either through the commission of a tort or the transaction of any business, our answer would be as stated in the majority opinion. If, however, our view is that the record shows only the most perfunctory and tenuous contacts in this state, we would be obliged to give a different answer. At any rate, these are value judgments to be made by the trial court, and cannot be made by us.

Finally, we cannot, of course, at this stage of the proceedings, nor from the record sent to us, pass upon that third and vital element essential to confer jurisdiction, and decide whether an ordering of jurisdiction here would, as we have said so many times, "offend traditional notions of fair play." *Tyee Constr. Co. v. Dulien Steel Prods., Inc., supra.*

I would, therefore, respectfully remand without answer.