[No. 443-41731-2.   Division Two.   July 9, 1971.]

FRANK B. OMSTEAD et al., Petitioners, v. BRADER HEATERS, INC., et al., Petitioners, YEOMANS-HAUFF, LTD., et al., Defendants, KUBOTA IRON AND MACHINERY WORKS, LTD., Respondent.

*Halverson, Applegate, McDonald, Bond & Grahn, J. S. Applegate,* and *William F. Almon,* for petitioners Omstead et al.

*Minnick, Hahner & Hubbard* and *R. F. Monahan,* for petitioner Brader Heaters, Inc.

*Leavy, Taber & Schultz* and *John G. Schultz,* for petitioner Trans-Global Metals, Inc.

*Sherwood, Tugman, Gose & Reser* and *William M. Tugman (Springer, Cornman & King, Noel Cornman, Goldsmith, Siegel & Engel,* and *Gerson F. Goldsmith,* of counsel), for respondent.

ARMSTRONG, J.— This writ of certiorari raises a single jurisdictional issue: Do the courts of this state have personal jurisdiction over Kubota Iron and Machinery Works, Ltd., a Japanese corporation, when a product of that corporation is placed in the channels of international commerce by sale to an intermediary in Japan with the knowledge that the product would be sold in the United States, and that product causes injury in the state of Washington? In answering this question we take cognizance of the fact that it was the intent of the legislature in enacting RCW 4.28.185, our "long-arm" statute, to allow our courts to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause of the United States Constitution, except as limited by the terms of the statute. *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 381 P.2d 245 (1963). In determining the limits

of due process we must consider whether the assumption of jurisdiction over Kubota does, or does not, offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945). While we are not concerned with the merits of this action, we must analyze the facts to ascertain whether there are sufficient minimum contacts to justify asserting jurisdiction over a Japanese corporation.

The consolidated causes of action arose when damages were sustained by the plaintiffs due to the failure of their new orchard heating systems, which were purchased directly from the defendants, Brader Heaters, Inc., a Washington corporation. Each of the plaintiffs alleged that the failure, resulting in a crop loss by frost, was caused by defective polyvinyl chloride (PVC) pipe which was negligently manufactured in Japan by Kubota.

The PVC pipe was used as a conduit for diesel oil which was pumped under pressure from a storage tank to heaters interspersed throughout the orchards. According to representatives of Kubota, PVC pipe is not adversely affected by diesel oil. Damages resulted when the allegedly defective pipe split while the system was being operated at pressures below those which the PVC pipe was allegedly represented to withstand. These breaks in the pipe caused a loss of pressure throughout the heating system, hence the diesel oil would not rise to the above-ground heaters where the oil was ignited. A drop in temperature in the orchard below a critical minimum for even a short time has disastrous consequences in crop loss by frost.

Kubota is a large Japanese corporation engaged in the manufacture and distribution of products of many types, including PVC pipe. There had been widespread use of Kubota PVC pipe within the United States for some years prior to 1967, the year during which the plaintiffs first sustained damages. Kubota, however, did not maintain any sales agencies of its own in the United States, but preferred to utilize independent, intermediate distributors.

Kubota is not formally authorized to do business within this state and has no agent designated for service of process in this state. Apparently the only Kubota employee in the United States during the period involved was a Mr. Matsuda, whose office was in Los Angeles, California. Mr. Matsuda designated himself as a representative of Kubota. His representative functions related solely to PVC pipe. He would handle any complaints about the pipe from customers and he would test the market situation for PVC pipe in this country and report it back to Japan.

Defendant Brader Heaters, Inc. was persuaded to purchase Kubota PVC pipe by Howard Hauff, president of defendant Hauff-Yeomans, Ltd., a Washington corporation, and by Michael Geiger, president of defendant Trans-Global Metals, Inc., a California corporation.

As early as May, 1965, Hauff-Yeomans, Ltd., in Yakima, Washington, had received catalogs with prices for Kubota PVC pipe from Trans-Global Metals. Also, Carl Brader, the president of Brader Heaters, Inc., stated in his deposition that in ordering the Kubota PVC pipe he relied in part on a 28-page pamphlet entitled "Kubota Iron and Machinery Works, Ltd." That pamphlet is printed in English and lists the various uses to which the PVC pipe can be put, as well as the physical properties of the various sizes of PVC pipe available.

When a customer in Washington, such as Brader Heaters, Inc., orders Kubota PVC pipe, the order is filled in the following manner: Hauff-Yeomans, Ltd., in Yakima, Washington, places the order with Trans-Global Metals in Los Angeles, California, who in turn places the order with the defendant Mitsui & Co.-U.S.A., Inc., a wholly owned subsidiary of Mitsui & Company, Ltd., a Japanese corporation. The latter Japanese corporation then places the order with Kubota in Japan, and the sale is fully transacted in Japan as far as Kubota is concerned, with title passing to Mitsui & Company, Ltd.

When PVC pipe is destined for an American consumer, the pipe is either selected from Kubota's inventory of pipe

meeting United States specification, or made specially to fill the order. Mr. Matsuda candidly admitted in his deposition that the particular pipe in question was manufactured specifically to fill the order of Brader Heaters, Inc. The order from Mitsui & Company, Ltd. to Kubota listed Seattle, Washington as the port of entry for the ordered PVC pipe. Trans-Global Metals, who is the exclusive agent for Mitsui as to the Kubota PVC pipe in the western United States, had 10 sales to Washington customers in 1966, totalling $25,716 and 19 sales to customers in this state in 1967, totalling $26,043.

Mr. Matsuda visited the plaintiffs' orchards on two occasions in the spring of 1967 to investigate the alleged defects of the Kubota PVC pipe after Kubota had been advised of complaints at its Los Angeles office. On one of these trips he was accompanied by Mr. Taro Yamazaki, the manager of Kubota's Plastic Research Laboratory in Japan. Mr. Matsuda states in his deposition that he merely told the plaintiffs to repair the breaks with more Kubota PVC pipe and continue to try to use the system. The plaintiffs, on the other hand, allege that Mr. Matsuda told them that if the broken Kubota PVC pipe was replaced with new Kubota pipe, they would have no further difficulties with its use in their heating systems. At any rate, the Kubota PVC pipe failed again during the 1968 orchard heating season causing additional crop failure. Mr. Matsuda again visited the plaintiffs' orchards in 1968 to attempt to resolve any disputes.

Commencing in June, 1969, actions were filed in Benton and Okanogan counties on behalf of the five plaintiffs, alleging total damages in the sum of $374,749.62. The pleadings allege negligent misrepresentations by the defendants, negligence in the manufacture and sale of the Kubota PVC pipe and the orchard heating system, and breach of an implied warranty. All five actions were consolidated with the Benton County action of Frank B. Omstead.

Kubota was served in Japan both by registered mail and by personal service at its office in Osaka, Japan. Service of

process is not an issue in this case. Kubota moved the trial court to quash service and dismiss for lack of jurisdiction, which motion was granted.

The relevant portions of our "long-arm" statute, RCW 4.28.185 provide:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this state;

(b) The commission of a tortious act within this state;

. . .

(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

While one could argue that there was a transaction of business within this state, we are limiting our consideration to the commission of a tortious act within this state. If Kubota is liable, their liability could be established under this section.

In *Tyee Constr. Co. v. Dulien Steel Prods. Inc., supra,* the court held that three factors must coincide before this state can assert jurisdiction over a nonresident defendant. That test summarizes the requirements of both our "long-arm" statute and the five United States Supreme Court cases, commencing with *International Shoe,* which have discussed the due process problems inherent in any case where state courts seek to assert jurisdiction over a nonresident defendant.[1] The *Tyee* test listed the following three factors at page 115:

---

[1] The five United States Supreme Court cases are the following: *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945); *Travelers' Health Ass'n v. Virginia,* 339 U.S. 643, 94 L. Ed. 1154, 70 S. Ct. 927 (1950); *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 96 L. Ed. 485, 72 S. Ct. 413 (1952); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957); *Hanson v. Denckla,* 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958).

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.)

In *Tyee* the action was to recover alleged labor costs incurred under a contract with the defendant, Dulien Steel Products, Inc. It dealt directly with section 1(A) "The transaction of any business within this state;" *Tyee* was not concerned with section 1(B) "The commission of a tortious act within this state." Many later cases which were concerned with "tortious acts" have referred to the *Tyee* test. *See* discussion of relevant cases from this and other jurisdictions in *Oliver v. American Motors Corp.*, 70 Wn.2d 875, 425 P.2d 647 (1967) and *Bowen v. Bateman*, 76 Wn.2d 567, 458 P.2d 269 (1969). The only cases which deal with a tortious act which do not refer to the *Tyee* test are *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wn.2d 469, 403 P.2d 351 (1965), *cert. denied,* 382 U.S. 1025 (1966) and *Thiry v. Atlantic Monthly Co.*, 74 Wn.2d 679, 445 P.2d 1012 (1968). Except for *Oliver,* the Washington cases which were based upon a tortious act, which relied upon *Tyee,* also contained an element of doing business within the state.

In *Golden Gate Hop Ranch* the defendant was a manufacturer in another state. The offending product was not sold directly to the plaintiff but was sold to an intermediate manufacturer who incorporated the product in a preparation designed for widespread commercial distribution, which the plaintiff ultimately used in this state. In that case the court held that a tortious act is committed in this

state, within the meaning of the "long-arm" statute, so as to submit the tort-feasor to the jurisdiction of the state courts, if damage is suffered in this state, even though the alleged negligent act occurred outside this state. Although there was no reference to a minimum contacts requirement, the court stated at page 471:

> However, in the recent case of *Nixon v. Cohn,* 62 Wn.2d 987, 385 P.2d 305, we held that, where damages result from negligence of a defendant, the injury occurring in this state is an inseparable part of the "tortious act," as that term is used in the statute. Consequently, the respondent brought itself within one of the subdivisions of the act and was entitled to take advantage of its provisions.
>
> There was also evidence that, while heptachlor in its raw form is not sold in this state, but is sold to manufacturers in other states who combine it with other ingredients to form usable pesticides, which are then sold through distributors in this state, the appellant manufacturer does engage in nation-wide advertising and has sent a representative to this state to do "missionary" work for the product.
>
> The company also subsidizes a research laboratory at Washington State College, at Pullman, which conducts tests in the use of the chemical. A strong argument can be made that these activities were sufficient to constitute the transacting of business within this state, as that term is used in the statute. However, it is not necessary for us to decide whether the appellant's activities fall within that classification, inasmuch as the fact that the injury occurred in this state was sufficient to bring the case within the "tortious act" classification. *Nixon v. Cohn, supra.*

In *Oliver v. American Motors Corp., supra,* the plaintiffs, residents of Oregon, purchased a car from an Oregon dealer. While on a motor trip in Washington, the Olivers and three occupants of the car were overcome by carbon monoxide gas which entered the automobile by reason of a defective exhaust system and a defectively sealed trunk. The trial court quashed service for lack of jurisdiction and the Washington Supreme Court affirmed. The court held

that where a retail merchant in another state makes a sale and delivery of merchandise in another state in the regular course of business there, he has not submitted to the jurisdiction of the Washington courts even though the article sold may thereafter be instrumental in causing harm in the state of Washington. At page 887, the court, in *Oliver*, stated the issue as follows:

The present problem is whether the jurisdiction over the person can constitutionally be acquired where, although the state of Washington is the place of tort, the out-of-state actor has no other contacts with this state and particularly has done nothing "purposeful" looking toward the projection of the consequences of his act into the territory of the state of Washington. The term "purposeful" we use, of course, in the sense that the actor intended or at least could be charged with knowledge that his conduct might have consequences in another state.

In rejecting the argument that the commission of a tortious act in this state was sufficient to bring the nonresident seller into the jurisdiction of the state of Washington, in and of itself, the court stated at page 889:

The distinction is obvious. Though it may be just to infer minimal contacts as to a manufacturer who produces goods and puts them into the broad stream of interstate commerce as was done in *Gray v. American Radiator & Standard Sanitary Corp., supra,*[2] and as was done, in fact, in *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp., supra;* we believe that no such inference is warranted where there is a sale by an out-of-state retailer to his local customer, if nothing further appears by way of a purposeful act on his part or possession of information, which would in any way charge the retailer with knowledge that his transaction might have out-of-state consequences. To attach personal jurisdiction because thereafter the out-of-state purchaser brings the offending mechanism into this state and a tortious consequence occurs is so slender and tenuous a thread upon which to hang the implication of submission to our juris-

---

[2] *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill. 2d 432, 176 N.E.2d 761 (1961).

diction, that in our judgment it does indeed offend "traditional notions of fair play and substantial justice" within the contemplation of the due process clause.

Clearly, we could find that the defendant Kubota had placed PVC pipe in the broad stream of interstate commerce and minimum contacts with this state could be inferred if a tortious act occurred in this state and if Kubota was a manufacturer in any of the United States. The next question is whether the courts of this state can establish jurisdiction over a manufacturer in a foreign country who places the goods in international commerce with the knowledge that they are to be used in the United States.

■ Since we accept the broad stream of interstate commerce concept, we find most of our answer in *Duple Motor Bodies, Ltd. v. Hollingsworth,* 417 F.2d 231 (9th Cir. 1969). In that case, Duple Motor Bodies, Ltd., a British corporation, designed and manufactured coach bodies, modified for use in Hawaii. It placed them on a chassis made by Vauxhall, another British corporation. Vauxhall shipped the completed coaches to a Hawaiian sales dealer; this dealer in turn sold them to a company conducting motor tours. Plaintiffs suffered personal injuries due in part to the negligent manufacture of the coach. In a products liability action, plaintiffs sued all parties that collaborated in the manufacture and distribution of the coach. Jurisdiction was founded upon the Hawaii "long-arm" statute, which like the Washington statute is patterned after the Illinois statute. The United States District Court for the District of Hawaii denied Duple's challenge to the jurisdiction of the United States District Court for Hawaii.

The Ninth Circuit Court relied heavily upon *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill. 2d 432, 176 N.E.2d 761 (1961) which held that "the place of wrong is where the last act takes place which is necessary to render the actor liable." It was there held that the alleged negligence in manufacturing cannot be separate from the resulting injury. Accordingly the court held in *Duple* that negligent manufacture outside the state resulting in

injury within the state constituted the commission of a tortious act in Hawaii under the "long-arm" statute.

Having disposed of the applicable law relative to an interstate setting, the court then addressed itself to the problem of products liability in the context of foreign trade. At page 235, the court, in *Duple Motor Bodies, Ltd. v. Hollingsworth, supra,* stated:

> Here the facts establishing jurisdiction under the Hawaii statute (commission of a tortious act within Hawaii) also establish liability and, where disputed, cannot suffice as contacts with the forum state. What is needed is some additional factor that would render it fair to require the manufacturer to submit these disputed issues to a foreign forum.
>
> In our judgment, the presence of Duple's coach bodies in Hawaii, brought about by Duple's sale to Vauxhall with knowledge that the product was destined for Hawaii, was sufficient contact with Hawaii to meet the requirements of due process.
>
> We do not regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade. If it is clearly foreseeable as a result of trade with a foreign state that injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade.

(Footnotes omitted.)

In *Duple* there was actual knowledge that the product was destined to be used in Hawaii. But the court, in reaching its conclusion, cited several cases in which a mere showing of foreseeability of the product's presence in the forum state was held to be sufficient contact.

In the case at bar, Kubota manufactured the PVC pipe to conform to United States specifications. Kubota sold directly to Mitsui with the knowledge that the pipe was destined for use in the United States. The Brader order was manufactured to conform to United States standards and

the pipe was specially made for that order. Although it was sold to Mitsui in Japan, the order from Mitsui showed delivery to a ship with a port of entry listed as Seattle, Washington. Kubota maintained a representative in the United States whose sole function related to market conditions of PVC pipe and checking on complaints relative to Kubota PVC pipe. Its representative rented a booth from Mitsui and another Japanese company. If he received an occasional order for PVC pipe he referred it not to Mitsui but directly to Trans-Global Metals, who were Mitsui's exclusive agents for the sale of PVC pipe in the western United States.

Under all of these circumstances we find that it was foreseeable to Kubota that the PVC pipe would be used in the United States and, therefore, in any of the states. In *Quigley v. Spano Crane Sales & Serv., Inc.,* 70 Wn.2d 198, 422 P.2d 512 (1967) the court considered both the "transaction of any business" and the "tortious act" provisions of our "long-arm" statute. With reference to the "tortious act" provision, the court pointed out that even where a manufacturer merely contemplates that his manufactured product will be resold and used in other states, but with no particular state in mind, the state where the injury takes place will have jurisdiction over the action when the product is used as intended by the manufacturer. That case is another recognition of the "broad stream of commerce" theory even though the court does not expressly so denominate it.

We have no problem in conforming the case at bar to the *Quigley* requirement that the product be used as intended by the manufacturer, which is recognized in *Gray* and other cases applying the "broad stream of commerce" theory. In our case, there is a strong inference from the evidence that the pipe was used as intended because the Kubota pamphlet recommended its use for the conduction of fuel oil and their representative stated that it was not adversely affected by diesel oil. Additionally, its representatives inspected the damaged pipe and recommended re-

placement with Kubota PVC pipe. We must conclude, from all of the evidence in this case and the applicable case law, that Kubota placed its PVC pipe in the broad stream of interstate commerce in the United States.

Courts have considered it just in tortious act cases to infer minimum state contacts to an American manufacturer who produces goods and places them in the broad stream of interstate commerce. However, when we are dealing with a manufacturer in a foreign country, we should consider additional factors which may or may not make it fair to require the foreign manufacturer to submit disputed issues to a court in the state of Washington. In *Duple* the court found that the only additional factor necessary to meet due process requirements was that the foreign manufacturer have knowledge that the product be used in Hawaii. Inferentially the court only required foreseeability that the product could be used in the forum state.

■ This court believes, however, that before we require a manufacturer in a foreign country to submit disputed issues of liability to a court of this state, we should, to protect judicial requirements of fair play and substantial justice, give consideration to other factors. Each case must depend upon its own merits in determining what protects judicial notions of fair play and substantial justice—the following are suggested guidelines:

1.  If a foreign manufacturer places his products in international trade, either directly or through use of intermediaries, it *must* be foreseeable that the product is destined to be placed in the broad stream of commerce in the United States, or sent to the forum state. Furthermore, the injury giving rise to the cause of action must result from a use intended by the manufacturer. If the product is placed in the broad stream of interstate commerce, the manufacturer is charged with knowledge that his conduct may have consequences in any state in the United States.

The "purposeful act" requirement of *Hanson v. Denckla,* 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958) is satisfied in tortious act cases when the manufacturer places

the goods in the broad stream of interstate commerce, or sends them to a foreign state. *See Phillips v. Anchor Hocking Glass Corp.*, 100 Ariz. 251, 413 P.2d 732 (1966); *Gray v. American Radiator & Standard Sanitary Corp., supra.*

2. The court should consider the extent of multistate business engaged in by the foreign manufacturer in this country, either directly or through intermediaries, and the benefits it receives. The court should then balance this against the extent or lack of multistate activity engaged in by the plaintiff. *See* von Mehren and Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1166-69 (1966). In our case we have a manufacturer who has a world-wide market for its products and its PVC pipe is used extensively in the United States. On the other hand, the plaintiffs are relatively localized and are engaged in the growing, harvesting and selling of fruit in this state.

3. The court should balance the relative convenience and burdens placed upon both the plaintiff and the defendant by reason of litigating the cause of action in this state.[3] In our case there are multiple plaintiffs, all of whom are Washington residents, and most of the defendants have transacted business in this state. Since the injury occurred in this state, the most convenient forum for the presentation of the evidence and the convenience of witnesses would be in this state. The burden on the foreign manufacturer is lightened by the fact that RCW 4.28.185(5) provides that if an out-of-state defendant prevails in the action, it is entitled to receive as part of its costs a reasonable attorney fee to be fixed by the court.

All of the above factors are important in determining whether due process permits the courts of this state to assert jurisdiction over a foreign manufacturer. However, we believe that foreseeability that the product could be used in

---

[3]The following cases have discussed the factor of relative convenience of the parties: *Tyee Constr. Co. v. Dulien Steel Prods., Inc., supra; Nixon v. Cohn*, 62 Wn.2d 987, 385 P.2d 305 (1963); *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp., supra; Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 435 P.2d 626 (1967); *Bowen v. Bateman*, 76 Wn.2d 567, 458 P.2d 269 (1969).

the forum state is the most important factor in products liability cases. It is only when the second and third factors strongly militate against the assertion of jurisdiction that the courts of this state should decline to accept jurisdiction over a foreign manufacturer.

We believe that there is a strong public policy in favor of subjecting manufacturers in foreign nations to jurisdiction for determining liability for tortious acts within this state, if the suit does not offend traditional notions of fair play and substantial justice. With the breakdown in international commercial barriers, and the resulting fact that a substantial portion of goods sold to American consumers today is manufactured in foreign lands, we would be striking a serious blow at consumer protection if we did not recognize such jurisdiction. We cannot expect consumers in this state to travel to Japan and other parts of the world to litigate injuries from tortious acts committed in this state —fairness to the foreign manufacturer does not require that hardship to local consumers. In many cases the foreign manufacturer is the only person liable or financially responsible. Courts can and do take judicial notice of the fact that liability insurance is not an unreasonable price to pay for the right to sell goods in this country.

We therefore hold that the order quashing the summons and dismissing Kubota for lack of jurisdiction is reversed. The petition to reinstate Kubota as a party to this action is granted.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied August 17, 1971.

Review granted by Supreme Court October 15, 1971.