[No. 774-2.   Division Two.   July 12, 1973.]

PUGET SOUND BULB EXCHANGE, *Plaintiff,* v. METAL BUILDINGS INSULATION, INC., *Appellant,* HAMILTON MANUFACTURING COMPANY, *Respondent.*

---

*William R. Hickman* and *Roy J. Moceri* (of *Reed, Mc-Clure, Moceri & Thonn*), for appellant.

*Harold E. Winther* (of *Combs & Small*), for respondent.

ARMSTRONG, J.—Metal Buildings Insulation, Inc., has appealed from a judgment entered against it in a suit alleging defective installation of insulation. The appeal attacks an order dismissing Hamilton Manufacturing Company, a third-party defendant and the manufacturer of the allegedly defective insulation.

One of the defendants, not a party to this appeal, constructed a building for the plaintiff, Puget Sound Bulb Exchange. Metal Buildings supplied the insulation. The roof leaked almost immediately and plaintiff brought suit contending that the insulation was defective, resulting in water damage to its inventory.

The suit was tried to the court and it found that the insulation supplied by Metal Buildings was defective, that

the plaintiff-owner of the building had not anticipated the use of a defective product and that the defective insulation should not have been recommended or supplied by any of the defendants. Accordingly, the court granted the plaintiff judgment for $96,062.30 damages caused by the defective insulation plus costs against all four defendants. The judgment also required Metal Buildings to indemnify the other three defendants. Metal Buildings has satisfied that judgment and is the sole appellant.

Before trial, Metal Buildings filed a third-party complaint against Hamilton Manufacturing Company, the manufacturer of the allegedly defective insulation. Hamilton is a Virginia corporation not authorized to transact business in this state. Hamilton moved to dismiss the third-party complaint 'for lack of personal jurisdiction over it. The court held a hearing on the motion and dismissed the third-party complaint without prejudice. Metal Buildings did not appeal within 30 days from this order. It has appealed from the final judgment in the suit and specifically complains, in its notice of appeal, of the order dismissing Hamilton.

The issues we must decide are: (1) does an appeal from the final judgment in the suit bring up for review the order dismissing the third-party complaint, and, if so, (2) did the trial court properly dismiss the third-party complaint for lack of in personam jurisdiction over Hamilton? We hold that the order of dismissal is properly before us and that the trial court erred in granting the dismissal.

Hamilton raises the first issue pursuant to CAROA 51 which allows a respondent to move to dismiss an appeal on any of several grounds. Hamilton contends that the failure of Metal Buildings to appeal within 30 days from the order of dismissal deprives this court of jurisdiction to consider the propriety of that order. We disagree.

The order dismissing Hamilton was entered on March 2, 1972. The final judgment in the suit was entered on April 7, 1972. Within 30 days of the final judgment, on May 3, 1972, Metal Buildings filed its notice of appeal.

CAROA 14 describes which judgments and orders are appealable. Subdivision (1) provides that the final judgment in any action or proceeding is appealable and that "An appeal from any such final judgment shall also bring up for review any order made in the same action or proceeding either before or after the judgment."

Hamilton contends that the order of dismissal was a final judgment because it determines with finality the rights of the parties to the third-party complaint. Hamilton argues that CAROA 14(1) does not contemplate untimely review of such a final order, even if it was merely a part of the entire suit, because it effectively precluded further dispute on the merits respecting the affected parties. We cannot agree with this analysis because, in our view, the order of dismissal did not preclude further dispute on the merits.

The order dismissing Hamilton stated in relevant part:

> ORDERED, ADJUDGED AND DECREED that the third party complaint filed by Metal Buildings Insulation, Inc., against third party defendant, Hamilton Manufacturing Company, be dismissed without prejudice as this court lacks jurisdiction over the person of Hamilton Manufacturing Company.

CR 54(b) describes which orders or judgments shall be final when the suit involves multiple claims or multiple parties. It provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only upon an express determination in the judgment, that there is no just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before

the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(Italics ours.)

The order dismissing Hamilton did not contain an express determination that "there is no just reason for delay" or an express direction for the entry of judgment. It was, therefore, subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. It was not a final judgment and could not be appealed at that time. The order must be one which is brought up for review by an appeal from the final judgment. CAROA 14(1); *cf. Oliver v. American Motors Corp.*, 70 Wn.2d 875, 425 P.2d 647 (1967).

■ Before proceeding to the merits of the dismissal we must discuss two minor issues. First, Hamilton, as a third-party defendant, is treated the same as any other nonresident defendant for purposes of RCW 4.28.185. In *Deutsch v. West Coast Mach. Co.*, 80 Wn.2d 707, 497 P.2d 1311 (1972), the court held that our long-arm statute does not discriminate between first- and third-party actions.

■ ■ Second, in reviewing the propriety of this dismissal, we must view the facts in the light most favorable to the nonmoving party. CR 12(b), which authorizes a motion to dismiss for lack of jurisdiction over the person, does not specifically allow the trial court to consider matters outside the pleadings.[1] However, the purpose of the

---

[1]CR 12(b) provides: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, he may assert at the trial

rules would be largely frustrated if the parties could not introduce matters outside the pleadings on such a motion. *See* 3A L. Orland, Wash. Prac., comment 2, at 16 (2d ed. 1968). CR 12(b) is identical to Fed. R. Civ. P. 12(b), 28 U.S.C.A. The portion of the rule which allows the parties to introduce extraneous matters in a motion to dismiss pursuant to CR 12(b)(6) is a 1946 amendment to Fed. R. Civ. P. 12(b), 28 U.S.C.A. Professor Moore, in his treatise on federal practice, states that the reason this particular amendment did not specifically include the authority to introduce extraneous matters in motions to dismiss on the grounds specified in Rule 12(b)(1-5) and (7) is that there never was any substantial doubt that the parties could introduce extraneous matters in these motions. 2A J. Moore, *Federal Practice,* ¶ 12.09[3], at 2297 (1972).

If matters outside the pleadings are presented to the court on a motion to dismiss for lack of personal jurisdiction under CR 12(b)(2) the motion is to be treated as a motion for summary judgment. 2A J. Moore, *Federal Practice, supra* at 2302; *see, e.g., Ace Novelty Co. v. M.W. Kasch Co.,* 82 Wn.2d 145, 508 P.2d 1365 (1973); *Ryland v. Universal Oil Co.,* 8 Wn. App. 43, 504 P.2d 1171 (1972). Because matters outside the pleadings were presented and not excluded by the trial court in this case, we will treat the motion as one for summary judgment under CR 56. Accordingly, viewing the materials presented in the light most favorable to the nonmoving party, we will affirm the trial court only if it appears that Metal Buildings would not have been able to present a genuine issue of material fact before the trier of fact. *Preston v. Duncan,* 55 Wn.2d 678, 349 P.2d 605 (1960).

---

any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

We proceed now to the merits of the dismissal. Metal Buildings contends that the State of Washington may assert personal jurisdiction over Hamilton, a Virginia corporation, pursuant to RCW 4.28.185,[2] our long-arm statute. Metal Buildings further contends that imposition of personal jurisdiction over Hamilton will not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945). We agree.

■ In *Ace Novelty Co. v. M.W. Kasch Co., supra* at 147, our Supreme Court reiterated its long-standing rule announced in *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 115, 381 P.2d 245 (1963):

> [T]here are three basic factors which must coincide if jurisdiction is to be entertained. Such would appear to be: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.)

---

[2]RCW 4.28.185 provides in relevant part: "(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this state;

"(b) The commission of a tortious act within this state;

"(c) The ownership, use, or possession of any property whether real or personal situated in this state;

"(d) Contracting to insure any person, property or risk located within this state at the time of contracting.

". . .

"(3) Only causes of action arising from acts enumerated herein may

The first factor outlines the statutory requirements of RCW 4.28.185 (1) (a) and (b). The second factor expresses the limitations set forth in RCW 4.28.185 (1) and (3) that the cause of action must arise from, or be connected with, the act or transaction purposefully performed or consummated in this state. The third factor does not arise from the statute at all. It expresses the due process limitation that the imposition of jurisdiction over the person of a nonresident defendant must not offend traditional notions of fair play and substantial justice. *Smith v. York Food Mach. Co.*, 81 Wn.2d 719, 504 P.2d 782 (1972); *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 435 P.2d 626 (1967).

In the instant case Metal Buildings has attempted to assert jurisdiction over the person of Hamilton pursuant to RCW 4.28.185 (1) (b), that Hamilton has committed a tortious act in this state. Thus, so far as the first two factors are concerned, it does not matter whether or not Hamilton has transacted business in this state. *Thiry v. Atlantic Monthly Co.*, 74 Wn.2d 679, 445 P.2d 1012 (1968). In a tortious act case the first two factors are satisfied whenever the person attempting to assert jurisdiction shows that the injury which is the subject of the suit occurred in this state and that it was caused by an act of the nonresident defendant outside this state. *Nixon v. Cohn*, 62 Wn.2d 987, 385 P.2d 305 (1963); *Smith v. York Food Mach. Co., supra*. Whether the cause of the injury which occurred to Puget Sound Bulb Exchange in this state was defective manufacturing of the insulation by Hamilton has not been decided by the trier of fact. Metal Buildings has, however, presented sufficient facts by affidavit and deposition to create a material issue of fact on the question. We must assume, therefore, that the first two factors are satisfied.

■ The third factor in the *Tyee* rule is the one most difficult of application. Confusion in applying the rule exists because either one of two theories will satisfy the requirement. Courts may look to find the sufficient minimum contacts of

be asserted against a defendant in an action in which jurisdiction over him is based upon this section."

*International Shoe Co. v. Washington, supra,* or they may determine that the nonresident defendant so placed its products in the broad stream of interstate commerce that assertion of jurisdiction over it will not offend traditional notions of fair play and substantial justice. Under this second theory the minimum contacts of *International Shoe* are inferred from the fact that the nonresident defendant knowingly places its product in the broad stream of interstate commerce. The manufacturer is charged with knowledge that such conduct may have consequences in another state. *Smith v. York Food Mach. Co., supra; Omstead v. Brader Heaters, Inc.,* 5 Wn. App. 258, 487 P.2d 234 (1971), opinion of this court adopted as the opinion of the Supreme Court in 80 Wn.2d 720, 497 P.2d 1310 (1972);[3] *see also Deutsch v. West Coast Mach. Co., supra.*

We agree with counsel for Hamilton that Metal Buildings has not shown sufficient minimum contacts between Hamilton and this state to satisfy us that jurisdiction may be asserted under the first theory. Hamilton is a Virginia corporation and has never sought authorization to transact business in this state. The record is void of any business dealings directly between Hamilton and Washington residents. Hamilton has not sent any of its products nor any of its agents or salesmen into this state. It has never solicited business within this state, nor has it kept or maintained any office, personnel, advertising, telephone lists, goods or property in Washington.

Metal Buildings has shown that Hamilton is engaged in the manufacture and sale of laminated paper and foil products. Hamilton processes paper received from paper mills into more sophisticated form either by coating it with other materials, laminating other materials such as aluminum foil to it or by coating it with wax. It manufactures five basic

---

[3] The international jurisdiction implications of *Olmstead v. Brader Heaters, Inc.,* 5 Wn. App. 258, 487 P.2d 234 (1971), are analyzed in a scholarly article entitled "*Civil Procedure—Long Arm Statutes—Jurisdiction Over Alien Manufacturers in Products Liability Actions,*" 18 Wayne L. Rev. 1585 (1972). The article discusses *Omstead* as the principal case.

products and does certain specialized laminations such as lamination of steel foil paper to paper for United States Steel and lamination of special plastic materials to plastic or paper for DuPont. Hamilton sells its products in at least 15 states and markets them with the aid of brochures, technical bulletins and direct mail pieces. Hamilton's customers either use these products themselves or sell them to their own customers and Hamilton is aware of this. Hamilton is also aware that, through this marketing chain, its products are used by such large and well-known companies as American Can Company, Colonel Sanders Kentucky Fried Chicken, Banquet Foods, Nestles, Kraft Foods and Johns Manville. These users of its products, according to Hamilton's vice-president of sales, change drastically from year to year. Since 1965 Hamilton's gross sales have increased steadily at the rate of 5 to 6 percent a year to about $7 million in 1972.

The specific product which was allegedly defective is foilscrim kraft paper. Hamilton manufactures this product from aluminum foil, paper, adhesive and fiberglass scrim which is loosely woven fiberglass fabric. Most users of this product, Metal Buildings included, adhere the foilscrim kraft paper to a fiberglass bed and use it as insulating material for buildings. Hamilton has been manufacturing it for 10 years and sells it to customers located in Indiana, Ohio, Pennsylvania, Missouri, Georgia and Virginia. Yearly sales of this product vary from $100,000 to $400,000. The particular foilscrim kraft paper used in the construction of the plaintiff's building in Pierce County was sold to Metal Buildings in Cleveland, Ohio, in 1966.

During 1965 to 1967 the corporate president of Metal Buildings met with the vice-president of sales for Hamilton and Hamilton's salesman in the Cleveland area several times. He discussed with both men the manner in which Metal Buildings uses foilscrim kraft paper and that Metal Buildings distributes the product on a national basis. The front sheet of a promotional brochure used by Metal Buildings during 1965 and 1966 and supplied to both men relates

that Metal Buildings, a specialist in metal building insulation, will deliver its products anywhere in the continental United States.[4]

It is clear that the particular sale of the foilscrim kraft paper to Metal Buildings in Cleveland by Hamilton, knowing that Metal Buildings distributed the product nationally, was not an isolated venture; it was but a small part of Hamilton's marketing practice. That practice was to avail itself of the vast market which could be reached through the broad stream of interstate commerce. Having voluntarily placed its product in the broad stream of interstate commerce, Hamilton is charged with knowledge that its product could appear in any state and therefore the necessary minimum contacts are inferred. Assertion of jurisdiction over the person of Hamilton does not, therefore, offend traditional notions of fair play and substantial justice. *Omstead v. Brader Heaters, Inc., supra; Smith v. York Food Mach. Co., supra.*

Because of our disposition of this appeal we do not reach the question raised by the cross-appeal.

The order of dismissal is reversed and the cause remanded for further proceedings consistent with this opinion.

PEARSON, C.J., and PETRIE, J., concur.

Petition for rehearing denied August 20, 1973.

Review denied by Supreme Court October 9, 1973.

---

[4]In a deposition of the vice-president of sales of Hamilton, the following occurred:

"Q But actually, your product [foilscrim kraft paper] could be a part of some finished product that could really show up anyplace? [Objection]

". . .

"A That could be said of ànything that anybody manufactures.

"Q And it could be said of yours?

"A Yes. It's improbable, but it could appear on the moon, I guess."