[No. 36302.    Department Two.    May 9, 1963.]

TYEE CONSTRUCTION COMPANY et al., Plaintiffs, v. DULIEN STEEL PRODUCTS, INC., Appellant, BELYEA COMPANY, INC., Respondent.*

\* Reported in 381 P. (2d) 245.

*Robbins, Oseran & Robbins, Melville Oseran*, and *Michel Stern*, for appellant.

*Cartano, Botzer & Chapman*, by *Stephen C. Watson*, for respondent.

HAMILTON, J.—This is an appeal from an order quashing, for lack of jurisdiction, out-of-state service, of a summons and cross-claim, upon respondent, Belyea Company, Inc. (a New Jersey corporation, hereafter referred to as Belyea).

The suit giving rise to the cross-claim and to this appeal was initiated by plaintiffs, Tyee Construction Company and St. Johns Motor Express Company (domestic corporations, hereafter referred to as Tyee) against defendant-appellant, Dulien Steel Products, Inc., of Washington (a domestic corporation hereafter referred to as Dulien).

By its suit, Tyee seeks to recover alleged extra labor costs incurred under a contract with Dulien, whereby Tyee was to dismantle and load for shipment to National Carbon Company of New York three used electrical generators.

The generators, located in the state of Washington, belonged to Dulien. Dulien solicited Belyea to buy or sell the generators. Belyea negotiated the ultimate purchase of the generators by National Carbon Company of New York. The dismantling and loading operations were to be carried out by Dulien, under the direction of an electrical engineer, residing in Washington, designated by National Carbon Company. Dulien contracted with Tyee for performance of such operations. A dispute arose as to methods being utilized by Tyee in dismantling and loading the generators, precipitating this suit by which Tyee seeks to recover from Dulien the alleged extra labor costs.

Dulien, alleging Belyea's responsibility for the added labor costs, sought and obtained an ex parte order adding Belyea as an additional party defendant, and authorizing service of a cross-claim. Following personal service in New Jersey, of Dulien's cross-claim and an amended complaint by Tyee, Belyea moved to quash service asserting lack of jurisdiction.

Belyea's motion was presented upon affidavits and, following argument, the trial court granted the motion for the reason that Belyea

". . . was not transacting any business within this state within the meaning of RCW 4.28.185(a), nor . . . subject to this court's jurisdiction on any grounds whatsoever, and for this court to assert jurisdiction . . . would be violative of due process. . . ."

Dulien assigns error to the trial court's action. We will assume, without deciding, that the trial court's order in the instant case is appealable.

RCW 4.28.185 reads:

"(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this state;

"(b) The commission of a tortious act within this state;

"(c) The ownership, use, or possession of any property whether real or personal situated in this state;

"(d) Contracting to insure any person, property or risk located within this state at the time of contracting.

"(2) Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the defendant outside this state, as provided in RCW 4.28.180, with the same force and effect as though personally served within this state.

"(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

"(4) Personal service outside the state shall be valid only when an affidavit is made and filed to the effect that service cannot be made within the state.

"(5) In the event the defendant is personally served outside the state on causes of action enumerated in this section, and prevails in the action, there may be taxed and allowed to the defendant as part of the costs of defending the action a reasonable amount to be fixed by the court as attorneys' fees.

"(6) Nothing herein contained limits or affects the right to serve any process in any other manner now or hereafter provided by law."

Dulien contends that, within the purport and intent of this statute and the due process clause of the federal constitution, Belyea, by the generator transaction, became amenable to the in personam jurisdiction of the state of Washington. Belyea contends the contrary.

RCW 4.28.185, Laws of 1959, chapter 131, § 2, p. 669, is patterned after the Civil Practice Act of Illinois, S.H.A. ch. 110, § 17; Ill. Rev. Stat. 1961, ch. 110, § 17.

In the language of the Supreme Court of Illinois, in *Nelson v. Miller*, 11 Ill. (2d) 378, 389, 143 N. E. (2d) 673, the statute, except as may be limited by its terms, reflects on the part of the legislature "a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause."

In *Pennoyer v. Neff*, 95 U. S. 714, 722, 727, 24 L. Ed. 565, the "extent permitted by the due-process clause" was expressed, in 1877, as follows:

" . . . The several States are of equal dignity and authority, and the independence of one implies the exclusion of power from all others. And so it is laid down by jurists, as an elementary principle, that the laws of one State have no operation outside of its territory, except so far as is allowed by comity; and that no tribunal established by it can extend its process beyond that territory so as to subject either persons or property to its decisions. 'Any exertion of authority of this sort beyond this limit,' says Story, 'is a mere nullity, and incapable of binding such persons or property in any other tribunals.' Story, Confl. Laws, sect. 539.

" . . .

" . . . where the entire object of the action is to determine the personal rights and obligations of the defendants, that is, where the suit is merely *in personam,* constructive service in this form upon a non-resident is ineffectual for any purpose. Process from the tribunals of one State cannot run into another State, and summon parties there domiciled to leave its territory and respond to proceedings against them. Publication of process or notice within the State where the tribunal sits cannot create any greater obligation upon the non-resident to appear. Process sent to him out of the State, and process published within it, are equally unavailing in proceedings to establish his personal liability."

*Pennoyer v. Neff, supra,* went on to establish that a judgment is not entitled to full faith and credit unless it satisfies the requirements of due process.

In 1945, a significant departure from the in personam jurisdictional concepts of *Pennoyer v. Neff, supra,* took place. The United States Supreme Court, in *International Shoe Co. v. Washington,* 326 U. S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057, speaking through Justice Stone, announced:

"Historically the jurisdiction of courts to render judgment *in personam* is grounded on their defacto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer v. Neff,* 95 U. S. 714, 733. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in

order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, *he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' . . ."* (Italics ours.)

Since the *International Shoe Co.* case, the United States Supreme Court has considered application of the new concept in *Traveler's Health Ass'n v. Virginia,* 339 U. S. 643, 94 L. Ed. 1154, 70 S. Ct. 927; *Perkins v. Benquet Consol. Mining* Co., 342 U. S. 437, 96 L. Ed. 485, 72 S. Ct. 413; *McGee v. International Life Ins. Co.,* 355 U. S. 220, 2 L. Ed. (2d) 223, 78 S. Ct. 199; and *Hanson v. Denckla,* 357 U. S. 235, 2 L. Ed. (2d) 1283, 78 S. Ct. 1228.

In *McGee v. International Life Ins. Co., supra,* the court observed (p. 222):

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. . . ."

However, in *Hanson v. Denckla, supra,* the court cautioned (p. 251):

". . . it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See *Vanderbilt v. Vanderbilt,* 354 U. S. 416, 418. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. . . ."

From this conceptual background, we turn to the Supreme Court's application thereof to foreign corporations or nonresident defendants.

The Supreme Court, in the *International Shoe Co.* case, dealing with a nonresident corporate defendant maintaining a number of salesmen within the forum state, said (pp. 316, 319):

"Since the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, [Citing case.], it is clear that unlike an individual its 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. To say that the corporation is so far 'present' there as to satisfy due process requirements, for purposes of taxation or the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. [Citing case.] Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection. [Citing case.]

" . . .

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. [Citing cases.] Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. [Citing cases.]

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. [Citing cases.]

"Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. . . ."

In *Traveler's Health Ass'n v. Virginia, supra,* the Supreme Court, in determining the right of the forum state to regulate through a regulatory body the activities of a foreign insurance corporation which solicited business in the forum state through the medium of its policyholders, stated (p. 648):

"Measured by the principles of the *Osborn* [*Osborn v. Ozlin,* 310 U. S. 53, 84 L. Ed. 1074, 60 S. Ct. 758], *Hoopeston* [*Hoopeston Canning Co. v. Cullen,* 318 U. S. 313, 87 L. Ed. 777, 63 S. Ct. 602] and *International Shoe* [*International Shoe Co. v. Washington,* 326 U. S. 310, 90 L. Ed. 95, 66 S. Ct. 154] cases, the contacts and ties of appellants with Virginia residents, together with that state's interest in faithful observance of the certificate obligations, justify subjecting appellants to cease and desist proceedings under § 6 [Acts of the General Assembly of Virginia, 1932, c. 236, p. 434]. The Association did not engage in mere isolated or short-lived transactions. Its insurance certificates, systematically and widely delivered in Virginia following solicitation based on recommendations of Virginians, create continuing obligations between the Association and each of the many certificate holders in the state. Appellants have caused claims for losses to be investigated and the Virginia courts were available to them in seeking to enforce obligations created by the group of certificates. . . .

" . . .

"We hold that Virginia's subjection of this Association to the jurisdiction of that State's Corporation Commission in a § 6 proceeding is consistent with 'fair play and substantial justice,' and is not offensive to the Due Process Clause."

In *McGee v. International Life Ins. Co., supra,* the court had before it a single contract of insurance, solicited by mail and serviced in the forum state by an out-of-state insurer. Finding a basis for jurisdiction in such relationship, the court said (pp. 222, 223):

" . . . In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,'

and 'presence' as the standard for measuring the extent of state judicial power over such corporations. See Henderson, The Position of Foreign Corporations in American Constitutional Law, c. V. More recently in *International Shoe Co. v. Washington*, 326 U. S. 310, the Court decided that 'due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' . . .

" . . .

"Turning to this case we think it apparent that the Due Process Clause did not preclude the California court from entering a judgment binding on respondent. It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. [Citing cases.] The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. . . ."

*Hanson v. Denckla, supra,* dealt with the jurisdiction of the Florida courts over a Delaware trust created by a Pennsylvania settlor. At the time of the litigation, the settlor and the beneficiaries were all residents of Florida. In denying Florida jurisdiction, the Supreme Court stated (pp. 251, 253):

"We fail to find such contacts in the circumstances of this case. The defendant trust company has no office in Florida, and transacts no business there. None of the trust assets has ever been held or administered in Florida, and the record discloses no solicitation of business in that State either in person or by mail. [Citing cases.]

"The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum State. In that respect, it differs from *McGee v. International Life Ins. Co.,* 355 U. S. 220, and the cases there cited. . . .

" . . .

" . . . The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The appli-

cation of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *International Shoe Co. v. Washington,* 326 U. S. 310, 319. The settlor's execution in Florida of her power of appointment cannot remedy the absence of such an act in this case.

"It is urged that because the settlor and most of the appointees and beneficiaries were domiciled in Florida the courts of that State should be able to exercise personal jurisdiction over the nonresident trustees. . . . It does not acquire that jurisdiction by being the 'center of gravity' of the controversy, or the most convenient location for litigation. The issue is personal jurisdiction, not choice of law. It is resolved in this case by considering the acts of the trustee. As we have indicated, they are insufficient to sustain the jurisdiction."

As may be noted from the foregoing quotations, the broadened concept of in personam jurisdiction over nonresident defendants and foreign corporations, in cases falling within the scope of RCW 4.28.185(1)(a), does not readily lend itself to the promulgation of an infallible formula automatically determinative of every case. As appropriately stated in *Perkins v. Benquet Consol. Mining Co., supra,* (p. 445), "The amount and kind of activities which must be carried on . . . in the state of the forum so as to make it reasonable and just to subject . . . to the jurisdiction of that state are to be determined in each case."

Against the backdrop of these decisions, and within the framework of our statute, it would appear reasonable, however, to conclude that there are three basic factors which must coincide if jurisdiction is to be entertained.[1] Such would appear to be: (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;[2] (2) the cause

---

[1] 47 Georgetown L. Rev. 342, 351.

[2] *Hanson v. Denckla, supra; McGee v. International Life Ins. Co., supra.*

of action must arise from, or be connected with, such act or transaction;[3] and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.[4]

Coming then to the instant case, a review of the affidavits, against the backdrop of the supporting documents and pleadings, reveals the following pertinent facts:

(1) Belyea's principal place of business is in New Jersey, and it has never solicited, qualified or registered to do, or previously done, any business in the state of Washington, or kept or maintained any office, personnel, advertising, telephone list, goods or property here;

(2) Dulien solicited Belyea to buy or obtain a buyer for Dulien's electrical generators located in the state of Washington;

(3) Negotiations between Dulien and Belyea, leading to the ultimate sale of the generators, were conducted by telephone, correspondence, and inspection trips by an agent or agents of Belyea;

(4) Negotiations between Belyea and National Carbon Company, the ultimate purchaser, were conducted out of state;

(5) Under the terms of sale negotiated by Belyea, Dulien was required to dismantle and load the generators for shipment, subject to direction and supervision by an electrical engineer designated by National Carbon Company;

(6) Dulien, of its own volition, selected and contracted with Tyee to perform the dismantling and loading operations for a stipulated price;

(7) Tyee's claim for added labor costs revolves around

---

[3]*Perkins v. Benquet Consol. Mining Co.*, *supra*; *Hanson v. Denckla*, *supra*; RCW 4.28.185(3).

[4]*International Shoe Co. v. Washington*, *supra*; *Traveler's Health Ass'n v. Virginia*, *supra*; *McGee v. International Life Ins. Co.*, *supra*; *Hanson v. Denckla*, *supra*.

whether it was entitled, under the terms of its contract with Dulien, to "shoot" or "gad" out certain concrete beams in the dismantling operation;

(8) An agent or agents of Belyea's entered the state of Washington during dismantling and loading operations, and participated in discussions regarding such operations; and

(9) Belyea's services in connection with the sale of the generators were essentially those of a broker.

From these facts it appears that: (a) Belyea purposefully performed some acts within the state of Washington, and (b) this action arose, indirectly at least, from such acts. Whether assumption of jurisdiction by the state of Washington over Belyea, in this action, offends traditional notions of fair play and substantial justice, however, presents a question fraught with some difficulty.

██ The difficulty springs from the fact that the primary action here involved essentially revolves about the performance of the Dulien-Tyee contract, rather than the Dulien-Belyea-National Carbon Company contract of sale. On the one hand, it can be said Belyea is drawn into the vortex of this dispute by the actions of Dulien and Tyee rather than as a direct result of its own acts. On the other hand, it is reasonable to infer that Belyea's profit was, in some measure, dependent upon the successful execution of the generator-dismantling operation.

In resolving the problem presented, we have considered and balanced the following: (a) Belyea's principal place of business is in New Jersey; (b) the generator transaction represented an isolated business excursion into this state by Belyea; (c) Belyea's participation in the transaction was solicited by Dulien; (d) the transaction involved no systematic or continuing service by Belyea; (e) the presence of any agents of Belyea in this state was incidental, rather than essential, to the transaction; (f) the primary action rests upon the Dulien-Tyee contract; and (g) the probable inconvenience and expense incident to Belyea's defense in this state.

We have concluded, under the circumstances here presented, that assumption of in personam jurisdiction over Belyea in this action would offend "traditional notions of fair play and substantial justice" within the contemplation of the due process clause.

The order quashing service is affirmed.

OTT, C. J., FINLEY and HUNTER, JJ., concur.

DONWORTH, J., concurs in the result.