**The DOW CHEMICAL COMPANY,**
**Appellant,**

v.

**NAPP–GRECCO COMPANY, Appellee.**

**No. 1791.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

April 26, 1978.
Rehearing Denied May 17, 1978.

William Key Wilde, Charles G. King, Ronald R. Scott, of Bracewell & Patterson, Houston, for appellant.

Donald B. McFall; Butler, Binion, Rice, Cook & Knapp, Houston, for appellee.

CIRE, Justice.

The Dow Chemical Company appeals from a trial court order which granted a special appearance filed by Napp-Grecco Company pursuant to Texas Rule of Civil Procedure 120a.

The underlying cause of action which gives rise to this appeal accrued when a liquified natural gas storage facility was destroyed on February 10, 1973 in New York. Numerous personal injury and wrongful death actions were filed in New York as a result of the explosion. While these New York actions were pending, Texas Eastern Transmission Corporation and Texas Eastern Cryogenics, Inc., the owners and operators of the storage facility, filed suit in February 1975 in Harris County, Texas and named The Dow Chemical Company and Battelle Memorial Institute as defendants. The two Texas Eastern companies sought recovery from the defendants, alleging that they sustained property damage and other losses totaling $135,000,000.00.

In December of 1975 Dow filed a third party action against Napp-Grecco, the contractor for the repair of leaks at the storage facility, and others seeking contribution and indemnity for any loss incurred by Dow in the suit filed by the Texas Eastern companies. Dow alleged that Napp-Grecco was a foreign corporation doing business in Texas without maintaining either a regular place of business, or a registered agent for service within the state and could be served with citation by serving the Secretary of the State of Texas pursuant to article 2031b of the Texas Revised Civil Statutes.

In March 1976 in New York, Texas Eastern Transmission Corporation and Texas Eastern Cryogenics entered into a "Memorandum Agreement of Settlement" with Napp-Grecco and several other parties. The agreement stated that "with respect to all disputed claims and/or actions . . . arising out of the incident of February 10, 1973" the plaintiffs obligated themselves to defend "all claims for injury to property owned by Texas Eastern Transmission Corp. and Texas Eastern Cryogenics, Inc. now pending or which may hereafter be asserted against . . . Napp-Grecco Co. . . . ." The agreement specifically stated:

Texas Eastern Transmission Corp. and Texas Eastern Cryogenics, Inc. will indemnify and hold harmless each of the other defendants named herein from any loss or damage or reasonable expense of litigation, including reasonable counsel fees, subject to the limitations herein arising out of any claims now pending or hereafter asserted in the 157th Judicial District Court of the State of Texas, Harris County, or in any other jurisdiction . . . .

Texas Eastern was free to choose counsel to represent Napp-Grecco, subject to Napp-Grecco's approval, and Napp-Grecco agreed to deliver to Texas Eastern all documents, evidence and persons under its control reasonably related to the issues involved in the litigation.

In April 1976 Napp-Grecco filed its special appearance pursuant to Texas Rule of Civil Procedure 120a, objecting to the jurisdiction. The motion alleged that the attempted service of citation pursuant to article 2031b of the Texas Revised Civil Statutes was not effective because Napp-Grecco was not at any time a resident of the State of Texas and was not at any time engaged in business or doing business in Texas and, as a consequence, the trial court had no jurisdiction over Napp-Grecco.

The trial court heard the special appearance in August 1977. The witness testifying for Napp-Grecco was its Vice President and Treasurer, Joseph M. Napp. Through him Napp-Grecco proved that it had never maintained an office, retained an agent, qualified to do business, solicited any business, or done any business in the State of Texas. Dow Chemical Company then introduced the March 12, 1976 agreement showing specifically that in that agreement Texas Eastern agreed to indemnify Napp-Grecco from losses arising out of this law suit, select and pay Napp-Grecco's attorneys and approve their fees, and control the terms of any settlement, and that Napp-Grecco agreed to make available to Texas Eastern documents, evidence and persons having information relating to the issues in this suit. On September 20, 1977 the trial court sustained the special appearance and dismissed Napp-Grecco from the original suit.

Appellant Dow asserts a single point of error, claiming that the trial court erred in granting Napp-Grecco's special appearance. Dow frankly admits that the only issue before this court is whether the performance of the "Memorandum Agreement of Settlement" by Napp-Grecco constitutes sufficient conduct on its part to subject it to a Texas court's jurisdiction. Dow relies on the case of *U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.Sup.1977). The Court, quoting from *O'Brien v. Lanpar Company,* 399 S.W.2d 340, 342 (Tex.Sup. 1966), reaffirmed the three basic elements that must exist to sustain jurisdiction over a nonresident:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

553 S.W.2d at 762. (The Court in *O'Brien* directly adopted this language from *Tyee Const. Co. v. Dulien Steel Products, Inc.,* 62 Wash.2d 106, 381 P.2d 245, 251 (1963).)

Appellant argues that the agreement of Napp-Grecco to provide Texas Eastern in the Texas suit with documents, evidence or witnesses under its control satisfies the first requirement. We cannot agree with this contention. Napp-Grecco had nothing to do with the filing of the suit in Texas and the mere fact that parts of the New York agreement concerned the Texas suit cannot be said to be an act "purposefully" conducted within this state. To paraphrase the language in the *U-Anchor* case, Napp-Grecco's "contacts with Texas were not grounded on any expectation or necessity of invoking the benefits and protections of Texas law, nor were they designed to result in profit from a business transaction undertaken in Texas." The agreement (as far as the record reflects) "was solicited, negotiated and consummated" in New York and Napp-Grecco "did nothing to indicate or to support an inference of any purpose to exercise the privilege of doing business in Texas." To hold otherwise, we believe would violate the due process requirements enunciated in *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1298 (1958) and quoted in the *U-Anchor* decision:

The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement

of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

553 S.W.2d at 763.

Appellant's point of error is overruled.

Affirmed.

J. CURTISS BROWN, C. J., not participating.