John ZEPEDA, Plaintiff,

v.

**PACE INTERNATIONAL RESEARCH, INC., Pace Communications, Inc., and Pace Video Center, Defendants.**

No. C87–324TB.

United States District Court,
W.D. Washington.

Oct. 8, 1987.

Curman Sebree, of Sebree and Sebree, Tacoma, Wash., for plaintiff.

Josephine B. Vestal, of Williams, Kastner & Gibbs, Bellevue, Wash., for defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

BRYAN, District Judge.

THIS MATTER comes before the court on the defendants' motion to dismiss defendants Pace Communications, Inc. and Pace International Research, Inc. for lack of personal jurisdiction; and to dismiss defendant Pace Video Center as not being a proper party to the action.

The court has reviewed the motion, documents filed in support and opposition, and the file; and now concludes that the defendants' Motion to Dismiss for lack of personal jurisdiction should be granted. Since this Court lacks jurisdiction over all three defendants, Pace Video Center's Motion to Dismiss based on the claim that it is not a proper party to the action is moot, and will not be ruled on by this Court.

### JURISDICTION

This federal district court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332. The issue in this motion is whether this court also has personal jurisdiction over the defendants Pace Communications, Inc. ("PCI"), Pace International Research, Inc. ("PIR"), and Pace Video Center ("PVC").

### GENERAL FACTUAL BACKGROUND

Plaintiff John Zepeda charges that his employer, PCI, discriminated against him

on the basis of a suspected handicap, in violation of both Oregon and Washington law. (O.R.S. Ch. 659 and R.C.W. 49.60 *et seq.*). Zepeda also charges that he was wrongfully discharged in violation of O.R.S. Ch. 659.030(1).

PCI is an Oregon corporation which rents out equipment for videotape production, and does post-production work for various customers. PIR is affiliated with PCI and is also an Oregon corporation. Pace Video Center ("PVC") is a division of PCI.

Plaintiff Zepeda was employed as PCI's engineering director from January 1986 to March 1987. When he was offered the position, he was a California resident. By the time Zepeda started working at PCI, which is located in Portland, Oregon, he and his family were residents of Woodland, Washington. In February 1987 Zepeda was hospitalized, and had heart surgery. Zepeda had intended to return to work, but, on March 18, 1987 he was terminated. His termination was confirmed in a letter to Zepeda from PVC general manager Martin Soloway, dated March 26, 1987. The letter stated that Zepeda's position was eliminated as a result of the need to reduce costs wherever possible, and that he would not be replaced with anyone else. Zepeda alleges that his termination was actually the result of PCI's fears that he would not be able to perform at his pre-hospitalization capacity. Zepeda alleges that following his termination, another individual was hired to take on some of his former duties. PCI denies that handicap discrimination had any role in Zepeda's termination. Zepeda is now residing in Tacoma, Washington.

## APPLICABLE LAW

### I. Washington Law

Zepeda maintains that this federal district court may exercise long-arm jurisdiction over the defendant Oregon corporations via Washington law. R.C.W. 4.28.-185(1)(a) provides:

(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state to any cause of action arising from the doing of any of said acts:

(a) The transaction of any business within this state; ...

The case of *Tyee Const. Co. v. Dulien Steel Products, Inc.*, 62 Wash.2d 106, 381 P.2d 245 (1963) provides a three part test for subjecting foreign corporations to Washington's long-arm jurisdiction. This test states that three basic factors must coincide for jurisdiction to be entertained:

1) the non-resident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

2) the cause of action must arise from, or be connected with, such act or transaction; and

3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. *Id.*, pages 115–116, 381 P.2d 245.

### II. Ninth Circuit Standards

In order to establish the existence of personal jurisdiction in a diversity of citizenship case, the plaintiff must show that the law of the forum state confers personal jurisdiction over the non-resident defendant, and that the exercise of personal jurisdiction accords with federal constitutional principles of due process. *Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir.1984); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.1986); *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir.1986).

In *Datadisc, Inc. v. Systems Technology Association*, 557 F.2d 1280 (9th Cir.1977), the Ninth Circuit distinguished between a

"general" and "specific" test for applying long-arm jurisdiction.

### A. *Specific long-arm jurisdiction.*

The Ninth Circuit test for specific jurisdiction is similar to Washington State's *Dulien Steel* test. The test includes the following conditions:

1. The non-resident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

2. The claim must be one which arises out of, or results from, the defendant's forum-related activities.

3. Exercise of jurisdiction must be reasonable. *Datadisc,* at 1287.

Seven factors among those to be considered in deciding the "reasonableness" of the exercise of specific long-arm jurisdiction were stated in *Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266 (9th Cir.1981). These are:

a. Extent of the defendant's purposeful interjection into forum;

b. Burden on the defendant of defending in the forum;

c. Extent of conflict with the sovereignty of the defendant's state;

d. The forum state's interest in adjudicating the dispute;

e. The most efficient judicial resolution of the controversy;

f. The importance of the forum to plaintiff's interest in convenient and effective relief;

g. The existence of an alternative forum.

Supreme Court decisions after *Datadisc* have prompted the Ninth Circuit to modify its previous interpretation of the three requirements for exercising specific long-arm jurisdiction. "Purposeful availment" has been interpreted to include the purposeful direction of a foreign act having effect in the forum state. *Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984), *Haisten v. Grass Valley Medi-*

*cal Reimbursement,* 784 F.2d 1392, 1397 (9th Cir.1986). Once the court has weighed the kind of "reasonableness" factors enumerated in *Marina Salina Cruz* and has found that an exercise of jurisdiction would be reasonable, such jurisdiction may be exercised with a lesser showing of minimum contact than would otherwise be required. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A showing that the defendant purposefully directed his activities at forum state residents creates a presumption of reasonableness, which the defendant may overcome by persuading the court that jurisdiction would be unreasonable. *Id.,* at 476, 105 S.Ct. at 2184, *Haisten* at 1397.

### B. *General long-arm jurisdiction*

Under the "general" test, if the non-resident defendant's activities within the state are "substantial" or "continuous and systematic," a sufficient relationship between the defendant and the state may be found to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities. *Datadisc,* at 1287. However, mere contractual relations with the forum do not permit general jurisdiction, *Fields v. Sedgwick Associated Risks, Ltd.,* 796 F.2d 299 (9th Cir.1986); and substantial purchases from the forum that are unrelated to the claim do not provide a basis for general jurisdiction. *Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404, 413 (1984).

In another recent case, systematic distribution of a musical group's records to California retailers along with an occasional musical performance by the group in that state was found insufficient to support an exercise of general jurisdiction. *Scott v. Breeland,* 792 F.2d 925 (9th Cir.1986). And, in *Cubbage v. Merchant,* 744 F.2d 665 (9th Cir.1984), treatment of California residents by defendant Arizona doctors in Arizona, was held to be insufficient to support general jurisdiction under California's long-arm statute. It has also been held that even the maintenance of a substantial sales force in the forum does not provide a basis

for general jurisdiction. *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir.1984). The holdings in these cases indicate that the Ninth Circuit has limited the exercise of general long-arm jurisdiction over claims unrelated to the contacts with the forum state.

## DISCUSSION

**A.** *Additional facts relevant to the defendants' contacts with Washington State*

In this case, the following undisputed facts are material to the issue of whether long-arm jurisdiction should be exercised.

The defendant Oregon corporations have no offices in the State of Washington, but PCI employees do solicit business in this state. PCI also does a small amount of advertising in publications circulated in Washington. PIR has done some video production work in Washington, including at least two productions in 1985 or 1986.

PCI rents equipment from a Washington company called Modular Video Systems, and has rented equipment to and performed services for a number of Washington firms. (Plaintiff's exhibits accompanying Memorandum in Opposition.) Copies of invoices reflecting business in 1986 show that PCI did approximately $86,300.00 in business with 18 Washington firms. These include Modular Video Systems ($2,474.37), Artronix ($82.50), Megavision ($6,328.00), Global Net News ($735.70), Invest West ($12,554.00), American Motion Picture Company ($2,004.00), Stillwater Productions ($1,836.00), Rick Sullivan ($13,257.50), J.W. Tel-Tronics ($2,188.87), Third Avenue Productions ($3,050.00), Daydawn Productions ($13,100.00), VTR Productions ($7,267.00), Baden and Company ($215.00), East West Pictures ($18,887.65), Federal Home Loan Bank of Seattle ($1,262.30), I.D., Inc. Video Productions ($850.00), Wedgewood Group ($142.50), and Westcom ($60.00). There is no indication what percentage of PCI's total 1986 business was derived from its contacts with Washington. From January through July 1987, PCI's business contacts with Washington amounted to over $30,000.

During the time Zepeda was employed at PCI, he had telephone contacts with Washington customers, worked on PCI equipment that was used for production in Washington, and occasionally took work home and performed that work in Washington. However, Zepeda's workplace was in Portland, Oregon, and he performed substantially all of his duties there.

**B.** *Analysis of the defendants' contacts according to theories of "specific" and "general" jurisdiction.*

1. "Specific" Jurisdiction

It is clear that the first prong of the state law test described in *Dulien Steel* has been met. PCI has sought and conducted business transactions in Washington. PCI's connections with Washington through its renting equipment to Washington firms, providing production services for Washington firms, and the transport of its equipment to Washington for repair have been numerous and systematic. PCI's business with Washington is obviously important to the corporation.

However, Plaintiff Zepeda fails to meet the second prong of the *Dulien Steel* test, which is that his claimed cause of action, discrimination due to a suspected handicap, must arise from, or be connected with, the defendants' transaction of business in Washington State. The undisputed facts material to this issue, viewed in the light most favorable to Zepeda, indicate that although he may have occasionally taken work home to perform in Washington, he was not required to work in Washington as a condition of his employment. In fact, he was assigned to work at PCI's Portland location. The employment agreement between Zepeda and PCI was consummated when Zepeda was a California resident and has no connection with the State of Washington. PCI's decision to terminate Zepeda has no connection with any of the defendants' business transactions with Washington, and cannot be said to have arisen from those transactions. Plaintiff's claim to long-arm jurisdiction un-

der Washington State law must therefore fail.

The Ninth Circuit test for an exercise of specific long-arm jurisdiction as described in *Datadisc* and *Haisten* also requires that the claim must be one that arises out of or results from the defendants' forum-related activities. Therefore, Zepeda's request for specific long-arm jurisdiction must fail for the same reason his claim under state law fails.

Zepeda's failure to present evidence sufficient to support this element of his claim under state long-arm jurisdiction must result in a dismissal of this case for lack of jurisdiction, unless Zepeda can show that "general" jurisdiction may be exercised under Ninth Circuit standards.

### 2. "General" Jurisdiction

■ Failure to make a sufficient showing that his cause of action arises from or is connected with the defendants' business transactions in the state does not prevent Zepeda from asserting a "general" long-arm jurisdictional claim under the Ninth Circuit test described in *Datadisc, Inc.* The defendants' business transactions with the State of Washington arguably are substantial, continuous, and systematic. Nevertheless, it appears the Ninth Circuit has declined to recognize an exercise of general long-arm jurisdiction in numerous cases in which the defendants' business contacts in the plaintiffs' chosen forums were equal to or greater than those in the case at bar. *See Helicopteros Nacionales de Columbia v. Hall, Scott v. Breeland, Cubbage v. Merchent,* and *Congoleum Corp. v. DLW Aktiengesellschaft.*

There are other reasons to conclude that an exercise of long-arm jurisdiction over these Oregon defendants would be at odds with federal constitutional principles of due process. An Oregon forum is readily available to the plaintiff. Although it may be less convenient for the plaintiff to maintain this cause of action in Oregon, it would be much more convenient for the Oregon defendants, and most of the witnesses, to be haled into court there. It appears that Oregon law prohibiting handicap discrimination provides the plaintiff with adequate protection in that forum, and provides the

plaintiff with an additional cause of action, wrongful discharge in violation of public policy, which he does not have in Washington. Since these defendant corporations are incorporated under Oregon law, Oregon has a greater interest than Washington in adjudicating the dispute. Finally, we observe that the law prohibiting discrimination on the basis of handicap is new and rapidly developing, and that the plaintiff's claim of termination based on a suspected handicap presents a novel cause of action which would best be addressed in the state where the cause of action arose. For these reasons, general long-arm jurisdiction over the defendants should not be exercised despite defendants' business contacts with the State of Washington.

### ORDER

For the foregoing reasons it is now ORDERED

1. The defendants' Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED.

2. Defendant Pace Video Center's Motion to Drop Improper Party is declared MOOT.

3. This case is DISMISSED.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record.