## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| FIREGANG, INC., a Washington corporation, | ) ) | No. 82012-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HERITAGE OAK MANAGEMENT, LLC, a California limited liability company, and SHANE DOUGLAS, an individual, | ) ) ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — A Washington court can exercise personal jurisdiction over an out-of-state defendant when Washington's long arm statute applies or when a defendant consents. Because Californian Dr. Shane Douglas consented by agreeing to a contract that contained a forum selection clause for Washington, the trial court did not err by denying a motion to vacate a judgment for lack of personal jurisdiction. But because the record shows Douglas's codefendant, Heritage Oak Management, a California limited liability company, neither consented nor had any contacts with Washington, the court erred by denying the motion to vacate as to it.

Therefore, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## FACTS

Firegang, Inc., is a Washington corporation that provides online dental marketing services. In May of 2016, Shane Douglas, a dentist in California, signed

a contract for Firegang's services.  The contract required a monthly payment of $2,750 for a one-year contract with automatic renewals every six months.  In March of 2018, Douglas wrote to Firegang, stating, "I would like to finish my services with Firegang . . . . Let me know how to proceed."[1]  Firegang asked how it could "make these last three months with Firegang better for you (if you'd still like to leave in July)."[2]  It did not hear from him again and did not cancel services.  In January of 2019, Douglas contacted his credit card company to initiate chargebacks for six months of services.  The chargebacks totaled $16,500.

That March, Firegang filed a complaint in King County Superior Court naming Douglas and Heritage Oak Management, LLC as defendants in a breach of contract action.  Douglas is the president of Heritage Oak Management, which manages a commercial property and "has nothing to do with" Douglas's dental practice.[3]  Douglas was personally served a summons and complaint in California, both in his personal capacity and as representative for Heritage Oak Management.

Neither Douglas nor Heritage Oak Management appeared in King County Superior Court.  In May, Firegang obtained a default judgment for $29,200.88, including $16,500 in damages and $11,633.50 in attorney fees.  Firegang registered the judgment in California and served it on Douglas personally.  Douglas and Heritage Oak Management filed a motion in that court to dismiss the sister-state judgment, and the California court denied the motion.

---

[1] Clerk's Papers (CP) at 184.

[2] CP at 184.

[3] CP at 250-51

Douglas and Heritage Oak Management then moved under CR 60(b) in King County Superior Court to vacate the default judgment, arguing neither was a party to the Firegang contract. The court denied the motion.

Douglas and Heritage Oak Management appeal.

ANALYSIS

I. Motion to Vacate

Douglas and Heritage Oak Management argue the default judgment must be vacated as void because the Washington court lacked personal jurisdiction when the judgment was entered.[4] Whether a trial court possessed jurisdiction is a question of law,[5] so we review de novo whether a court had personal jurisdiction over a party when the default judgment was entered.[6] We presume a default

---

[4] Firegang contends they are precluded from raising this issue because the issue was already decided by the California court. Although it cites to authority regarding claim preclusion, it appears to argue issue preclusion applies because Firegang's argument focuses on a single issue rather than many issues within a larger claim. Issue preclusion, also called collateral estoppel, "'prevents relitigation of an issue after the party estopped has had a full and fair opportunity to present its case.'" Weaver v. City of Everett, 4 Wn. App. 2d 303, 314, 421 P.3d 1013 (2018) (emphasis omitted) (internal quotation marks omitted) (quoting Barr v. Day, 124 Wn.2d 318, 324-25, 879 P.2d 912 (1994)). To prove issue preclusion applies, Firegang must show, among other elements, a judgment on the merits of the issue. In re Marriage of Pennamen, 135 Wn. App. 790, 805, 146 P.3d 466 (2006) (quoting Christiansen v. Grant County Hosp., 152 Wn.2d 299, 307, 96 P.3d 957 (2004)). Because the California court resolved the issue by stating it "cannot set aside the sister state judgment under California Code of Civil Procedure section 473(b)" and did not actually consider the issue raised here, CP at 255-56, Firegang fails to show issue preclusion applies.

[5] Long Painting Co., Inc. v. Donkel, 14 Wn. App. 2d 582, 587, 471 P.3d 893 (2020) (citing Dougherty v. Dep't of Labor & Indus. for State of Wash., 150 Wn.2d 310, 314, 76 P.3d 1183 (2003)).

[6] Ahten v. Barnes, 158 Wn. App. 343, 350, 242 P.3d 35 (2010) (quoting Dobbins v. Mendoza, 88 Wn. App. 862, 871, 947 P.2d 1229 (1997)).

3

judgment is supported by substantial evidence, so the party seeking vacation of the default judgment has the burden of demonstrating the court lacked personal jurisdiction.[7] But default judgments are not favored,[8] and evidence submitted by the movant is viewed in a light most favorable to it.[9]

A Washington court can exercise personal jurisdiction over an out-of-state defendant when the defendant consents.[10] A defendant can consent by agreeing to a forum selection clause.[11] A forum selection clause "is one in which the parties agree on a presiding tribunal."[12] "Forum selection clauses are prima facie valid."[13] The party challenging the clause bears "'a heavy burden of proof'"[14] and "must

---

[7] Pfaff v. State Farm Mut. Auto. Ins. Co., 103 Wn. App. 829, 834, 14 P.3d 837 (2000) (citing White v. Holm, 73 Wn.2d 348, 352, 438 P.2d 581 (1968)); see CR 60(e)(1) (requiring party seeking vacation to provide an affidavit "setting forth a concise statement of the facts or errors upon which the motion is based, and if the moving party be a defendant, the facts constituting a defense to the action or proceeding"); CR 12(b)(2) (listing lack of personal jurisdiction as a defense).

[8] Little v. King, 160 Wn.2d 696, 703, 161 P.3d 345 (2007) (citing Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 581, 599 P.2d 1289 (1979)).

[9] Id. at 705 (citing White, 73 Wn.2d at 352).

[10] Kysar v. Lambert, 76 Wn. App. 470, 484, 887 P.2d 431 (1995). A court can also exercise personal jurisdiction when the state's long-arm statute, RCW 4.28.185, is satisfied. Ralph's Concrete Pumping, Inc. v. Concord Concrete Pumps, Inc., 154 Wn. App. 581, 584-85, 225 P.3d 1035 (2010) (citing State ex rel. Coughlin v. Jenkins, 102 Wn. App. 60, 64, 7 P.3d 818 (2000)).

[11] Kysar, 76 Wn. App. at 484 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

[12] Id. at 485 (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 587-88, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991)).

[13] Dix v. ICT Grp., Inc., 160 Wn.2d 826, 834, 161 P.3d 1016 (2007) (citing Kysar, 76 Wn. App. at 484-85).

[14] Carnival Cruise Lines, 499 U.S. at 592 (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 17, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)).

present evidence to justify nonenforcement."[15]

The Firegang contract incorporates terms and conditions.[16] Those terms provide that "[a]ny disputes arising from this contract are to be arbitrated, and done so within the state of Washington."[17] Neither Douglas nor Heritage Oak Management challenge this provision as invalid or as insufficient to allow an exercise of personal jurisdiction over a party consenting to it.

Douglas contends the court lacked personal jurisdiction over him because he signed the contract with Firegang in only a representative capacity as president of his dental practice, Shane Douglas DDS PC. Heritage Oak Management argues it was not party to the Firegang contract and did not transact any business in Washington. Because "'[e]ach defendant's contacts with the forum [s]tate must be assessed individually'" when multiple parties challenge personal jurisdiction,[18] we begin with Douglas.

The question is whether Douglas consented to the contract individually or only in his representative capacity. Washington uses the objective manifestation

---

[15] Dix, 160 Wn.2d at 835 (citing Voicelink Data Servs., Inc. v. Datapulse, Inc., 86 Wn. App. 613, 618, 937 P.2d 1158 (1997)); accord M/S Bremen, 407 U.S. at 18 ("[I]t should be incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.").

[16] CP at 27.

[17] CP at 30.

[18] Failla v. FixtureOne Corp., 181 Wn.2d 642, 651, 336 P.3d 1112 (2014) (quoting Calder v. Jones, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)) (first alteration in original).

theory for contracts.[19] To form a contract, the parties must objectively manifest mutual assent to its terms.[20] A person's signature on a contract can be an objective manifestation of his intent to be bound by the contract's terms.[21] "[W]here an agreement contains language binding the individual signer, 'additional descriptive language added to the signature does not alter the signer's personal obligation.'"[22]

In Losh Family, LLC v. Kertsman, this court held a signatory was personally liable for a judgment despite adding his title to his signature.[23] Losh Family owned a warehouse, which it leased to an international food business.[24] A married couple formed a limited liability company and used it to purchase the food business, including the lease.[25] The husband signed the lease assignment as "Grover International, LLC, by William Grover member," and the food business assigned its lease to "William and Teresa Grover as individuals dba Grover

---

[19] P.E. Sys., LLC v. CPI Corp., 176 Wn.2d 198, 207, 289 P.3d 638 (2012) (quoting Keystone Land & Dev. Co. v. Xerox Corp., 152 Wn.2d 171, 177, 94 P.3d 945 (2004)).

[20] Keystone, 152 Wn.2d at 177-78 (citing Yakima County Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 388, 858 P.2d 245 (1993)).

[21] Retail Clerks Health & Welfare Tr. Funds v. Shopland Supermarket, Inc., 96 Wn.2d 939, 944, 640 P.2d 1051 (1982); see Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 695, 952 P.2d 590 (1998) ("We hold a signature on a guaranty with additional words that are *descriptio personae* generally binds the individual who signed the agreement unless the signature creates an ambiguity as to who is bound.").

[22] Losh Family, LLC v. Kertsman, 155 Wn. App. 458, 464, 228 P.3d 793 (2010) (quoting Wilson Court, 134 Wn.2d at 700).

[23] 155 Wn. App. 458, 464, 228 P.3d 793 (2010).

[24] Id. at 461.

[25] Id.

International, LLC."[26] The couple later sold the lease to someone who defaulted.[27] Losh Family sued the food business and its owner, the couple and their company, and the defaulting party.[28] The trial court granted summary judgment for Losh Family, concluding the husband was individually liable for the breach and had to indemnify the food business and its owner.[29]

The husband argued his signature was intended to bind only the company owned by him and his wife, rather than binding him personally.[30] But because the food business signed over the lease to the couple "as individuals" and the husband signed the assignment, he was individually liable.[31] "If [the husband] did not want to be personally bound on the assignment, he should have insisted on the elimination of the language within the agreement that designated the assignee as 'William and Teresa Grover as individuals.'"[32]

Similarly, in <u>Wilson Court Limited Partnership v. Tony Maroni's, Inc.</u>, the court held the president of a corporation operating a pizza parlor was personally liable as a guarantor despite using his title after his signature on the guaranty.[33] The pizza parlor leased a retail space, and the landlord required a guaranty as a

---

[26] <u>Id.</u> at 461, 463.

[27] <u>Id.</u> at 462.

[28] <u>Id.</u>

[29] <u>Id.</u>

[30] <u>Id.</u> at 463.

[31] <u>Id.</u> at 464.

[32] <u>Id.</u>

[33] 134 Wn.2d 692, 695-96, 952 Wn.2d 590 (1998).

lease condition.[34]  The guaranty referred to the pizza parlor as "Tenant," the landlord as "Landlord," and the president as "Guarantor."[35]  When signing the guaranty, the president signed "Anthony L. Riviera President" beneath the word "Guarantor."[36]  The lease's signature block identified the pizza parlor as the tenant and Riviera as its president.[37]  After the pizza parlor declared bankruptcy and its lease assignee defaulted, the landlord obtained a judgment against the pizza parlor president personally.[38]  On appeal, the president argued he signed the guaranty only in a representative capacity, making the guaranty unenforceable against him personally.[39]

The court held the president was personally liable.[40]  Although "a signature with additional descriptive language may create an ambiguity requiring judicial construction of the agreement to determine who is bound by its terms,"[41] the unambiguous language of the guaranty identified the president as the "Guarantor," distinct from the pizza parlor as "Tenant."[42]

---

[34] Id. at 696.

[35] Id. at 696-97.

[36] Id. at 697.

[37] Id. at 698.

[38] Id.

[39] Id. at 699.

[40] Id. at 705.

[41] Id. at 700 (citing Hansen v. Lindell, 14 Wn.2d 643, 649-54, 129 P.2d 234 (1942)).

[42] Id. at 705-06.

Here, Douglas is identified in the name and signature blocks of the contract, as appear below:

**Firegang Digital Marketing Agreement**

This is a legal agreement between Firegang Digital Marketing & the Client listed below.

**Client:**

Company Name: Heritage Oak Dental (Shane Douglas DDDS PC)

Client's Name: Shane Douglas          Client's Title: President

. . . .

Client Signature: *Shane Douglas*
Shane Douglas (May 27, 2016)          Date May 27, 2016

Like the pizza parlor president in Wilson Court, Douglas's name appears near his title without stating he signed in his representative capacity. Despite identifying a company and title, Douglas signed his name only and did not indicate he was signing as a company representative.[43]

---

[43] Douglas contends Firegang is judicially estopped from arguing he is individually bound by this contract because it relied upon a similar contract in a different case and did not argue that signatory was individually bound. The purpose of judicial estoppel is to protect the sanctity of judicial proceedings by guarding courts from adopting inconsistent positions due to a litigant's duplicity. Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (quoting Cunningham v. Reliable Concrete Pumping, Inc., 126 Wn. App. 222, 225, 108 P.3d 147 (2005)); see Johnson v. Si-Cor, Inc., 107 Wn. App. 902, 907, 28 P.3d 832 (2001) (judicial estoppel "doctrine is designed to protect the court and not litigants"). Thus, it more likely applies when "'a party's later position' is clearly inconsistent with its earlier position.'" Arkison, 160 Wn.2d at 538-39 (internal quotation marks omitted) (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)). Because the issue in the prior lawsuit was whether the signatory possessed the authority to bind the corporation and not, as here, whether the signatory was personally bound, Firegang's positions are not inconsistent. Douglas fails to establish the doctrine of judicial estoppel applies.

Also like <u>Wilson Court</u> and like <u>Losh Family</u>, the contract's terms show Douglas signed individually. Throughout the contract, it refers to what the "Client" must do but does not use the terms "Company Name" or "Client's Title." Next to the "Client Signature" line, Douglas signed his name without adding any title or reference to a representative position. And Douglas wrote only "SD" on the initial line to confirm "I have read, accept, and agree to the terms & conditions outlined" on the Firegang website.[44]

Like the contract document, the terms and conditions use the term "Client" to define one party's duties and do not use the term "Company." For example, "[i]n the event client chooses to engage with Firegang, Client agrees to contract with Firegang as outlined per the terms above."[45] The termination terms specify "Client acknowledges a 1 month minimum cancellation notice. . . . Prior to the cancellation or reduction of services, . . . an 'exit interview' is required to take place with Firegang and the person that signed the original agreement."[46] This acknowledges a "Client" could be different from a contract signatory, but only Douglas is identified as the "Client" and only Douglas's name is written next to "Client Signature."

Douglas's subsequent conduct shows he acted as the "Client."[47] When he asked about cancelling his contract, he wrote

---

[44] CP at 27.

[45] CP at 30.

[46] CP at 30.

[47] <u>See</u> <u>Pelly v. Panasyuk</u>, 2 Wn. App. 2d 848, 866, 413 P.3d 619 (2018) (regardless of ambiguity, a court may consider extrinsic evidence of "the

> I would like to finish <u>my</u> services with [F]iregang and redirect all marketing to the standard office number . . . . I would also need to get all the documentation and sign-in information for the different web portals and services. I would like the sight [sic] to be put back on siteground servers. Let me know how to proceed.[48]

Notably, the agreement requires that the "Client" provide passwords to Firegang to allow website access, provides for the "Client" to receive website data from Firegang upon termination of the contract, gives the "Client" authority to direct advertising spending, and states that the "Client" owns the website after Firegang has been paid.[49]

As in <u>Losh Family</u>, Douglas failed to clearly identify himself as a company representative. Like <u>Wilson Court</u>, the mere presence of his title and the company's name adjacent to his name did not manifest an intent to sign only as a company representative. Although Douglas asserts he signed only in his "capacity as President of Shane Douglas, DDS PC,"[50] his objective manifestation of intent proves otherwise.[51]

---

subsequent conduct of the parties" to determine the intent of the parties) (citing <u>Berg v. Hudesman</u>, 115 Wn.2d 657, 666-68, 801 P.2d 222 (1990)).

[48] CP at 184 (emphasis added).

[49] CP at 27, 30-31.

[50] CP at 180-81.

[51] <u>See</u> <u>Pelly</u>, 2 Wn. App. 2d 865 (courts interpret contracts "'by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties'") (quoting <u>Hearst Commc'ns, Inc. v. Seattle Times Co.</u>, 154 Wn.2d 493, 503, 115 P.3d 262 (2005)). Although Douglas argues Firegang viewed him as signing in his corporate capacity because a declaration from a Firegang employee stated he signed the contract "for" Shane Douglas, DDS PC, the argument is not persuasive. The employee refers to Douglas as one defendant and to his dental practice as another defendant. CP at 24. Even viewed in a light most favorable to Douglas, this fleeting reference does not unsettle the unambiguous contract language.

Douglas was a party to the Firegang contract. Because Douglas was a party to the contract and its terms and conditions included a forum selection clause with Washington as the chosen forum, he consented to Washington courts exercising personal jurisdiction over him.[52] The court did not err by denying the motion to vacate for lack of personal jurisdiction as to Douglas.[53]

Heritage Oak Management contends it could not be subject to the default judgment because the trial court could not exercise personal jurisdiction over it. Heritage Oak Management is a California company. Douglas, who is also president of Heritage Oak Management, declared that the company "has nothing to do with my dental practice and had no contact with Firegang, Inc."[54] The record

---

[52] Kysar, 76 Wn. App. at 484 (quoting Burger King, 471 U.S. at 472 n.14).

[53] Even if Douglas had not consented, his contacts with Washington would have been sufficient for the court to exercise personal jurisdiction. The Fourteenth Amendment and Washington's long arm statute, RCW 4.28.185, allow a Washington court to exercise personal jurisdiction over a foreign defendant when (1) he purposefully does some act or consummates some transaction in the forum state; (2) the act or transaction is connected with the cause of action; and (3) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. Precision Lab. Plastics, Inc. v. Micro Test, Inc., 96 Wn. App. 721, 726, 981 P.2d 454 (1999) (quoting Tyee Constr. Co. v. Dulien Steel Prods., Inc., 62 Wn.2d 106, 115-16, 381 P.2d 245 (1963)). Douglas signed a one-year contract with a Washington company, hiring it to provide custom made website and marketing services and allowing the contract to automatically renew for two more six-month terms. By personally forming a contract "contemplating future consequences and creating a continuing relationship with ongoing obligations," Douglas "purposefully and continuously transacted business within Washington [s]tate." Precision Lab. Plastics, 96 Wn. App. at 727. Firegang filed a complaint in Washington alleging Douglas breached that contract. And the forum selection clause in the contract warned Douglas he would be subject to the exercise of personal jurisdiction by Washington courts in the event of a contract dispute. Because all three requirements are met, Washington's long arm statute allowed the court's exercise of jurisdiction over Douglas.

[54] CP at 250-51.

12

shows Heritage Oak Management was not party to the Firegang contract and had no contacts with Washington. Because it did not consent to a Washington court's exercise of jurisdiction and has no contacts with Washington other than this litigation, the court erred by denying the motion to vacate the judgment against Heritage Oak Management for lack of personal jurisdiction.[55]

II. Attorney Fees

RAP 18.1 allows an award of attorney fees where authorized by law, contract, or equity.[56] Douglas and Heritage Oak Management request attorney fees on appeal under RCW 4.28.185(5). RCW 4.28.185(5) authorizes an award of attorney fees "to a defendant who, having been hailed into a Washington court under the long-arm statute, 'prevails in the action.'"[57] Because Douglas does not prevail, he is not entitled to an award of attorney fees. However, because Heritage Oak Management prevailed, it is entitled to attorney fees from this appeal subject to compliance with RAP 18.1.

Firegang contends it is entitled to an award of attorney fees from appeal under its contract with Douglas. The terms and conditions authorize an award of

---

[55] See Precision Lab., 96 Wn. App. at 725 ("an out-of-state defendant must have some minimum contact with the state" for an exercise of personal jurisdiction) (citing International Shoe Co. v. State of Washington, Etc., 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)); Kysar, 76 Wn. App. at 484 (quoting Burger King, 471 U.S. at 472 n.14) (parties can consent to exercise of personal jurisdiction).

[56] Buck Mountain Owners' Ass'n v. Prestwich, 174 Wn. App. 702, 731, 308 P.3d 644 (2013) (quoting Equitable Life Leasing Corp. v. Cedarbrook, Inc., 52 Wn. App. 497, 506, 761 P.2d 77 (1988)).

[57] Scott Fetzer Co., Kirby Co. Div. v. Weeks, 114 Wn.2d 109, 112, 786 P.2d 265 (1990).

attorney fees, collection costs, and court costs.[58]  When a contract authorizes an award of attorney fees, RCW 4.84.330 allows an award of fees to the prevailing party.[59]  A prevailing party "is the one 'who receives an affirmative judgment in its favor.'"[60]  Because Firegang is entitled to an affirmative judgment in its favor against Douglas, it is a prevailing party and entitled to an award of attorney fees from appeal, subject to compliance with RAP 18.1.

Therefore, we affirm in part, reverse in part, and remand for modification of the judgment in accordance with this opinion.

_____

WE CONCUR:

_____          _____

---

[58] Although Firegang relies upon its 2018 terms and conditions in its request for attorney fees, the record does not show Douglas consented to them.  The 2016 terms and conditions, which Douglas read and agreed to when he contracted for services, prohibits modification "of the agreement between us, except as we may later agree in writing to modify."  CP at 30.  The record does not show any subsequent written agreement between Douglas and Firegang to modify the applicable 2016 terms and conditions, which include an attorney fee provision.

[59] Kysar, 76 Wn. App. at 493.

[60] Id. (quoting Marassi v. Lau, 71 Wn. App. 912, 915, 859 P.2d 605 (1993)).